Folger, J.
The first question is, whether the second policy issued by the defendant was a valid contract in the hands of the plaintiff. He did not pay the premium for it. It does not appear that the defendant ever received the premium, until it was allowed by the jury, in deduction from the amount of the verdict for the plaintiff. Undoubtedly, by operation of law, it was due and payable at. once. Undoubtedly, also, the defendant could waive its right to immediate payment, and give the plaintiff credit. A delivery of the policy without exacting payment is, for the time, a waiver of the right to have immediate payment. Hor does the fact that the policy contains a condition, which expresses just what the law, without any condition declares, make the delivery any less a' waiver of the right to instant payment, and less a giving of *527 credit. For the defendant may waive all conditions which it proposes in its own favor, as well as those which the law provides for it; so that, when, as in this case, the defendant claims that it is relieved from liability by the non-payment of the premium, inasmuch as that is a breach of one of the conditions, if it appears that the condition has been waived, the bare fact of non-payment does not avoid the contract. The condition relied upon provides: (1), that the premium is due and payable on the delivery of the policy; (2), but where credit is given to the extent of four months, the policy shall be in force during that time; (3), but unless the premium is paid within four months the company shall not be liable for a loss occurring thereafter. This, it is claimed, is one condition, dependent in all its clauses. But do the circumstances of the case bring the parties within it ? It is certain that the policy was so delivered as that the plaintiff had a credit for the premium. Was it for the extent of four months — was it limited to that extent? If the defendant had sued the plaintiff for0the premium in one month after, could he have set up that he had a credit of four months? If he had relied upon his communication with the home office and the principal officers there, all that he could show was that his application had been approved, and a policy executed and delivered to him, with no demand of immediate payment. This gave him no fixed term of credit. He could pay as soon as he pleased. He could be compelled to pay as soon as the defendant pleased. The bare fact of a delivery of the policy, so as to waive that part of the condition requiring immediate payment, did not fix the credit that ensued at "the definite term of four months named in the other part of the condition. The language of it does not create invariably a credit of four months, or of any specific time. It is phraseology that speaks by implication, and impliedly declares that a credit to that extent may be given. But it is needed, if it is to ,be a credit for that time, binding both parties or cither party to it definitely, that there be some further agreement, express or implied, than that which flows from *528 the sole fact of a delivery, without exaction of premiums at the same time. If the plaintiff, on the other hand, relied upon his communication with Lansing, the agent, he could show no more than that between them there was no definite time for payment, and that a longer credit than four months had"been given him on the other policy, and an expectation induced of the same lenity on this. If the agent had no authority to make such agreement, then the plaintiff must rely only upon his indefinite term of credit, obtained from the home office. If the agent had authority to make it, it then made no fixed term, sharply terminable on a given day, and running to the extent of four months, or just to any date within that extent. And being an indefinite term of credit, on demand made of him for payment, after any reasonable time, he would have been liable to suit. So that the plaintiff is not brought within the terms of the condition. Ho fixed term of credit was given to him. The condition was not in any of its terms applied to the dealings of the parties. It was not adhered to nor insisted on by the defendant. Is there not ground for a jury to say that it was waived? Again; the plaintiff and defendant had been related in a similar contract before this one was made. For the premium on that, credit had been given. That contract was of the twentieth May. The premium was not paid until the thirtieth September, more than four months after. This was paid by the plaintiff" to the agent. It is inferable that i't was received by the defendant from the agent, for no objection is made to the validity, of the first policy. But it made a manifest waiver of the condition in that policy, and it recognized the authority of the agent to receive payment after the extent of credit named in the condition had passed. The plaintiff had, from this, a right to' consider the condition waived by the defendant. And the jury from this evidence, and the other in the case, might well infer that the defendant, in its dealings with the plaintiff, had not insisted upon adhering itself, or compelling him to adhere, to the terms of this condition. It may be said here, that another clause of this condition permitted *529 this payment after the expiration of four months. This clause is this: “ If no loss has occurred, payment of the premium after said four months will -render this policy valid.” But the payment was not made by the plaintiff under that clause. It was made by him under his first agreement for credit with the agent. By giving credit at all, the agent disregarded the condition, for it as a general rule prescribes payment on delivery of the policy. A credit for the extent of four months is not a thing which follows of itself, but is in the option of the defendant. The agent was not authorized to give any credit, for by other provisions of the policy he was not permitted to give the consent of the company in any ease, nor to waive any stipulation or condition, except to consent to assignments and to additional insurance on giving notice to the defendant. When, then, the company issued this first policy without payment of the premium, and received the premium after the expiration of four months through the hands of the agent, it certainly waived the conditions restrictive of its agent. It had reason to infer that a credit had been given by the agent to the plaintiff, in violation of the conditions of the policy, and it had reason to know that by accepting the premium through the hands of the agent, it gave the plaintiff occasion to suppose that the condition was not adhered to by the company itself. The premium was paid on the first policy, and the insurance effected on the second on the same day. It is presumable that the premium and the application went together to the home office. When the second policy was issued without comment, it did indicate to the plaintiff a waiver by the defendant. It was also a fact which the jury might rely upon to find a waiver by it.
The second question is, whether certain of the property burned was insured by this second policy, and the claim is that the description in the policy does not apply to the property destroyed. The property in question was hay and oats. The property insured was hay and grain. It was burned in a barn occupied by the plaintiff. It was insured in a barn occupied by the plaintiff. So far there is accord. It is *530 claimed that it was insured as in barn number one; whereas, as is claimed, it was placed in barn number two. If .it be conceded that the terms of the policy and application clearly fix the location of the property at risk to have been in a barn known as barn number one, where, in the application or policy, is either of the barns which stood upon the farm identified as barn number one? The only thing in the appeal book which, apart from the oral testimony, identifies either barn as number one is the diagram. But it does not appear that it was a part of the application or the policy. A diagram is spoken of in the oral testimony, but it appears that it was made by the agent adjusting losses, after the fire. Hence, the designation in the application of the barn in which was the property insured as barn number one, does not show that it was a barn other than that in which was the property which was burned. The appellant claims that a survey was made when the application for the first policy was tendered and that such survey is made a part of the application for the second policy, and it shows that the bam now claimed to be number one is therein thus indicated. It is true, that in the first application there is .given the size of a dwelling-house, for there was a risk in the first policy on household stuff, etc. It is true that there is given a barn measurement, but it is a measurement of barns, in the plural, and the only reference in the second application to the survey in the first, is for the size of barns, in the plural again ; and the first policy insures his stock, utensils, etc., in barns, in the plural. It is true, that in giving distances the first application says, “ west barn from house twelve rods,” but it does .not number it as one or two; nor can it because it there speaks of one barn in the singular number, override the language of the application and the policy, which locates the property at risk in both barns, and thus in either barn. Nor can the omission of the agent to give the dimensions of the other barn be a controlling fact in the inquiry whether he intended to take a risk on property in that barn only. He did prepare his application for insurance on property in both *531 barns. There are other like tilings referred to by the appellant, but they are susceptible of like answer. A great difficulty with its position is, that there is no clear indication of either barn on the farm being barn number one of the policy, if it should be granted that such indication would be conclusive. Again; it is to be observed that the designations, “ barn number one,” “ barn number two ” and “ corn barn ” are in print, both in the application and the policy. They are a part of the form used by the defendant and occur in every application and policy, and had, when inserted there, no reference to the barns occupied by the plaintiff. Any significance which the numerical designations have is therefore derived, not from the fact the numbers are there, but from the written part of the application or policy, or from the acts and oral communications of the parties. The written part of the application does not aid the defendant, when all considered. “ Ilay and Grain $1,000,” occur in writing immediately after the printed words: “ Barn Ho. 1, produce therein,” and if barn number one was identified, would be of service to the defendant. In answering the printed requirement in the application, for a statement of the distance of the barns from house, etc., after the printed word “ north,” occurs written phrase: “ Barn from house ten rods.” This can have no consistent application to the situation of the plaintiffs buildings, as shown by the proof, unless it is appropriated to the barn in which was the property burned. There was no barn, north from a house. There was a house north from the barn in which was the property burned, from forty to fifty rods; and another house, north from it about ten rods. The agent has written his name to the statement upon the application, that he has personally examined the within property. This must mean the property insured ; at least that must be included in the statement. And if the statement is true, he saw it in the barn which was burned. He further certifies that there is other insurance on this property to the sum of $1,700, in the first policy. How the property insured by that, was live stock, utensils, wagon and *532 harness in “said barns,” not designating in which. In fact ' some of it was in .the barn burned. In the policy are found the same printed phrases: “ Barn Ho. 1,” “ Produce therein,” etc. The written phrase is, “ hay and grain in barns,” in the-plural as the plaintiff claims, though the defendant is not understood to assent that it is so. But there is so much to^ warrant the claim, as that the final “ s,” which makes the plural, is printed in the case, but in such way as to raise inquiry. If it he barns, then the description covers the place in which was the property insured. If it be not clear that it he so, hut there he chance for a plausible claim that there is, the defendant is not aided. So that it appears, that there is nothing in the application or the policy, which applies h> either barn on the farm the designation of barn number one which is printed in the papers, while there is somewhat in them which goes to show tliat the property burned was the property insured, and was insured as being then in the place' in which it was afterward burned.
It is manifest, that either the policy was upon the hay and grain in the place in which it was burned; • or that the description of its place, is so indefinite as to need aid from oral testimony. If the- latter, a ease of latent ambiguity is presented, which it is permissible to explain. It was then not error to receive the testimony which tended to that end. When it was received, it so preponderated, as that there was no difficulty in arriving at the intention and real agreement of the parties. If there was no latent ambiguity, it was because the meaning of the application and policy, was the same as that of the parties, as shown by the testimony. And then the testimony was immaterial and harmless. And so there was no error in receiving it.
The judgment appealed from, must be affirmed with costs.
All concur.
Judgment affirmed.