FRANK G. BIGELOW, *et al vs.* C. E. V. DRAPER, *et al.*

Opinion filed November 11th, 1896.

### Action to Condemn Property—Name of Corporation.

An action to condemn property for railroad purposes should be brought in the name of the company, despite the fact that its property is in the hands of receivers appointed in foreclosure proceedings, who are operating the road.

### Amendment as to Party Plaintiff After Verdict.

Such action having been brought in the name of the receivers, *held,* that it was not error for the court, after verdict fixing the compensation to be paid for the taking of the property condemned, to amend the pleadings and all proceedings by inserting the name of the corporation on its own motion. Also, *held,* that as the action was brought by and in the names of the receivers, on behalf of the corporation, it was not necessary to dismiss the action, and institute a new suit, as would be necessary where the sole plaintiff, who sues on his own behalf, has no interest in the cause of action, the right to sue being in another.

### Issues in Condemnation Triable to Court—Exception.

All issues in a condemnation action, except the issue of compensation, are triable by the court, without a jury.

### Necessity of Condemnation is Question for the Court.

The question of the necessity of condemning the property sought to be condemned, while in its essential nature a political question, has been made a judicial question in this state by statute; but it is triabie by the court, and not by a jury.

### What is Legal Necessity.

A legal necessity, within the meaning of the statute, for the taking of private property for railroad purposes, exists when it appears that such property is needed by the corporation to enable it to augment the safety of its roadbed at points where the roadbed is unsafe at a particular time of the year.

### Diversion of Water Course.

Section 210 of the constitution does not prohibit the diversion of a portion of a non-navigable water course, where such diversion is needed for a public use, the substantial integrity of the stream not being thereby impaired.

### Riparian Rights—Condemnation of.

Under the statutes of this state, the right of the riparian owner to have a natural stream flow over his land is such property as may be condemned for railroad purposes.

### Verdict on View Must be Within Limits of Evidence.

While a jury which has taken a view, under the statute, of the premises which it is claimed will be damaged by a proposed diversion of a water course therefrom, may weigh the evidence as to value in the light of what they have seen, yet their verdict must be within the limits of such evidence. It cannot rest alone upon their own judgment, based upon mere inspection of the property.

### Order of Condemnation Reversed as to Part of Defendants.

An order of condemnation in proceedings under the eminent domain statute may be reversed as to one of the parties, and affirmed as to others.

### Question of Compensation Resubmitted.

The court being of the opinion that the compensation awarded one of the defendants was insufficient under the evidence, *held*, that the order should be reversed as to such defendant, and the single question of compensation be submitted to another jury.

Appeal from District Court, Morton County; *Winchester*, J.

Action by Frank G. Bigelow and Edwin H. McHenry, as receivers of the Northern Pacific Railroad Company, and others, against C. E. V. Draper and others. Judgment for plaintiffs. Defendants C. E. V. Draper and others appeal.

Modified.

*Newton & Patterson, E. C. Rice,* and *James G. Campbell,* for appellants.

The plaintiffs could not maintain this action without authority from the court appointing them, and none was shown. High on Rec. § 200; *M. & St. L. R. Co.* v. *M. W. R. Co.*, 63 N. W. Rep. 1035; *Booth* v. *Clark*, 15 L. Ed. 164; *Davis* v. *Gray*, 21 L. Ed. 447; *Pendleton* v. *Russell*, 36 L. Ed. 547; Rev. Codes, § 5406. The order making the Northern Pacific Railroad Company a party plaintiff, after verdict and repeated objections of appellant was error. 1 Enc. Pl. & Pr. 585 and cases cited. *Beard* v. *Telgman*, 66 Hun. 12, 20 N. Y. Supp. 736. The enforcement of the right of eminent domain is a matter entirely dependant upon statute. Mills Em. Dom. § 48; Lewis Em. Dom. § 37; 1 Rorer on Railroads, 291. The power is strictly construed. 6 Am. and Eng. Enc. Law, 522; Mills Em. Dom. § 48; *Barre R. Co.* v. *M. & W.*

*R. R. Co.*, 4 L. R. A. 785, and statutes authorizing it will not be extended in their operation by implication. 1 Rorer on Railroads, 298. By § 210, constitution, the legislative power is restricted, in its right to delegate to plaintiff authority to turn the course of a natural stream. *M. & R. R. Boom Co.* v. *Patterson*, 98 U. S. 206; Lewis Em. Dom. § 10. This section of the constitution is self executing. *Peo.* v. *Palmer*, 64 Ill. 41; *State* v. *Holladay*, 64 Mo. 526; *Hills* v. *Chicago*, 60 Ill. 86; *Willis* v. *Ry. Co.*, 16 L. R. A. 286. It is disabling, not enabling. *State* v. *C. R. Co.*, 46 N. J. L. 289. The necessity for diverting the Heart river is not shown. Section 5959, Rev. Codes. The word *"necessary"* as used in this statute means indispensible, requisite or essential. *M. & St. P. R. Co.* v. *City*, 34 Wis. 271-277. The question of necessity is a judicial one. Pierce on Railroads, 148; *M. & St. P. R. Co.* v. *City*, 23 Minn. 167; *In re St. P. & N. P. R. Co.*, 33 N. W. Rep. 701. And no mere matter of convenience, economy or caprice will create the necessity mentioned in the statute. *Seattle & M. R. Co.* v. *State*, 22 L. R. A. 217; *Pugh* v. *Golden Valley R. Co.*, (L. R.) 12 Ch. Div. 274; 6 Am. & Eng. Enc. L. 539; *Watson* v. *Acq. W. Co.*, 36 N. J. L. 196; *U. S.* v *Chicago*, 12 L. Ed. 660.

*Ball, Watson & Maclay*, for respondent.

The order allowing amendment of the summons and complaint by adding the name of the Northern Pacific Railroad Company as party plaintiff was proper. Section 5297, Rev. Codes. The railroad company was a necessary party. Sections 5962, 5956, 2947, Subd. 3, Rev. Codes. The corportion which owns the road is the proper plaintiff in condemnation proceedings. *Kip* v. *Railway*, 67 N. Y. 227; *Railway* v. *Union Boat Co.*, 1 N. E. Rep. 27; *In re Railway*, 2 N. Y. Supp. 278; *Cory* v. *Ry.*, 44 A. and E. Ry. Cases, 183; *Dietricks* v. *Ry. Co.*, 13 N. W. Rep. 624. Both the corporation and the receivers were interested and proper parties plaintiff. Section 5229, Rev. Codes. The issues both of law and fact, the method of trial and the testimony were the same as they would have been if the corporation had been named as one of the plain-

tiffs when the proceedings were begun. The amendment was purely formal. *Perine* v. *Grand Lodge,* 50 N. W. Rep. 1022; *Railway* v. *Boswell,* 36 N. E. Rep. 1103; *Estes* v. *Thompson,* 17 S. E. Rep. 98; *Eve* v. *Cross,* 76 Ga. 693; *Thornton* v. *Britton,* 22 At. Rep. 1048; *Meyer* v. *State,* 25 N. E. Rep. 351; *Stanton* v. *Kenrick,* 35 N. E. Rep. 19; *Ins. Co.* v. *Mueller,* 77 Ill. 22; *Chandler* v. *Frost,* 38 Ill. 559; *Hume* v. *Kelley,* 43 Pac. Rep. 380; *Railway* v. *Bowles,* 24 S. E. Rep. 388; *Dean* v. *Gilbert,* 36 N. Y. Supp. 1004. The amendment permitting the receivers to allege and prove their authority to sue was proper. Sections 5297, 5300, Rev. Codes; 1 Enc. Pl. & Pr. 515-516; *Morgan* v. *Smith,* 95 N. C. 396; *Maddox* v. *Thorn,* 60 Fed, Rep. 217; *Hartford & Co.* v. *Love,* 25 N. E. Rep. 346; *Wild* v. *Railway,* 27 Pac. Rep. 954; *Clough* v. *Adams,* 32 N. W. Rep. 10; *Claude* v. *Handy,* 34 At. Rep. 532; *Hall* v. *Rice,* 64 Cal. 463; *Richmond* v. *Irons,* 121 U. S. 27; *Baggot* v. *Engleson,* Hoff. Ch. 377. The right of trial by jury and due process of law have no application to condemnation proceedings. Cooley's Const. Lim. § § 563, 673, n; *Beekman* v. *Railway,* 3 Paige, Ch. 45; *Peo.* v. *Smith,* 21 N. Y. 595; *Ex parte Reynolds,* 44 Am. and Eng. R. R. Cases, 60; *Willyard* v. *Hamilton,* 7 Ohio, 111; *Ames* v. *Ry.,* 21 Minn. 241, 291; *Hoppikus* v. *Com'rs,* 16 Cal. 248; *Great Falls Co.* v. *Garland,* 25 Fed. Rep. 521. The question of the amount of damages is for the jury in this.state. Section 14, Const. § § 5955, 5965, Rev. Codes. The order appointing receivers gave them power to begin this suit. *Davis* v. *Gray,* 16 Wall. 203; *Harland* v. *Bankers, etc. Co.,* 33 Fed. Rep. 199; *Southerland* v. *Railway,* 9 Bank Reg. 306; 20 Am. & Eng. Enc. L. 230. The lands under a river may be condemned for use of a railroad. *Kerr* v. *R. Co.,* 27 N. E. Rep. 833; *In re N. Y. Cent. Ry Co.,* 77 N. Y. 248; *Gould* v. *Ry.,* 6 N. Y. 522; *Getty* v. *Ry.,* 21 Barb. 617; *Ormerod* v. *Ry.,* 13 Fed. Rep. 317. Under a statute similar in phraseology to 5957, and 5958, Rev. Codes, it is held that the right of an individual to enjoy the flow of water in its natural channel upon or along his land can be condemned for public use. *St. Helena Water Co.* v. *Forbes,* 62 Cal. 182. There was evidence to sustain the finding,

that the taking was necessary, and the finding is conclusive. *Port Huron, etc. Ry.* v. *Vorheis*, 15 N. W. Rep. 882. The awards of damages are in no instance for a smaller sum than estimated by one or more witnesses, and should not be disturbed. *Fremont, etc. Ry. Co.* v. *Meeker*, 44 N. W. Rep. 79; *Clark* v *Ry. Co.*, 37 N. W. Rep. 484.

CORLISS, J. The object of this action is to condemn certain property, in order that the Northern Pacific Railway Company (formerly the Northern Pacific Railroad Company) may divert from its accustomed channel, for a distance of two miles, the flow of the Heart river, a non-navigable water course, restoring the water to its old channel further down the stream. The end which the company has in view is to so change the bed of the stream, that it may be no longer compelled to cross the river at two points at which the water course intersects its right of way, thus obviating the necessity of maintaining two bridges at these places where the road is carried over the stream. The following diagram exhibits the proposed alterations in the channel of the river:

EXHIBIT "A."

In consummating this project, it became necessary to obtain the title, by condemnation proceedings or otherwise, to the real estate over which the artificial channel was to be excavated, and also the extinguishment of the riparian rights of the owners of the real property from whose land the water course was to be diverted. The action now before us for final disposition was instituted under our statute for the purpose of condemning these two classes of property. Section 5961 of the Revised Codes provides that all proceedings under the chapter regulating the exercise of the power of eminent domain must be prosecuted by civil action. The issues relating to the necessity for the condemnation of the property in question and the matter of compensation were tried before a jury. The verdict was in favor of the railroad company on the question of necessity. The damages of the various owners of the property affected by the proceedings were assessed by the jury. A final order of condemnation having been made and entered, under § 5970, Rev. Codes, three of the defendants have appealed to this court, and here insist that several errors were committed by the court in the course of the trial, and also that the damages assessed are inadequate under the evidence.

The first point urged by the defendants is that the court erred in permitting the plaintiff, after the verdict, to amend the summons, complaint, and all the proceedings by adding the name of the Northern Pacific Railroad Company as a party plaintiff. The action was originally instituted in the name of the receivers of the company, such receivers having been appointed by the proper United States Circuit Court in foreclosure proceedings. We think it was necessary that the action should be carried on in the name of the corporation itself. Section 5962, Rev. Codes, declares that the complaint must contain the name of the corporation, association, commission, or person in charge of the public use for which the property is sought. We do not think that the word "person," in the statute, was designed to embrace a person acting as receiver for a railroad corporation. This word was

employed to confer authority to institute a condemnation action upon a person in charge of some public use, when the title to the property condemned is vested in the public. Without attempting in this case to define the exact significance of the phrase "the person in charge of the public use," we are clear that it was not intended to cover the case of the temporary control of a railroad coporation by receivers. Within the meaning of the statute, a railroad corporation is still in charge of the public use, despite the fact that, for a brief period, the actual operation of the road is in the hands of receivers. The title to the railroad property is not in them, and the interest in the property condemned will not vest in them. But the corporation, under the law, will hold such property, as it holds all of its property, impressed with a public trust. We think that the following cases support our view, although not directly in point: *Kip* v. *Railroad Co.*, 67 N. Y. 227; *New York, L. & W. R. Co.* v. *Union Seamboat Co.*, (N. Y. App.) 1 N. E. Rep. 27; *In re Railway*, (Sup.) 2 N. Y. Supp. 278; *Cory* v. *Railroad Co.*, (Mo. Sup.) 13 S. W. Rep. 346; *Dietricks* v. *Railway Co.*, (Neb.) 13 N. W. Rep. 624.

As we consider that the corporation was a necessary party plaintiff, it was proper to amend the summons and pleadings by inserting its name as a plaintiff. This was done upon its own petition, and on due notice to the defendants. It is true that this amendment was not made until after verdict; but the corporation had practically been a party to the action before that time, and the amendment simply brought it formally upon the record in the case. No right of the defendants could possibly be prejudiced by such amendment. The defendants were fully heard on the two questions on which they were entitled to be heard,—the question of necessity, and the question of damages. Making the corporation a party plaintiff did not affect their rights with respect to either one of these matters. They were as fully investigated and fairly tried as if the corporation had been a party plaintiff from the inception of the action. Moreover, in view of the fact that the corporation was actually engaged, through its

attorneys, in carrying on the action up to the time of verdict, it is obvious that it would have been bound by the final order in the action without ever being made a party plaintiff thereto, as effectually as if it had been a party to the action from the beginning. Our statute relating to amendments is very broad in its provisions. Rev. Codes, § 5297. If the amendment is in furtherance of justice, it may be made. To hold that the amendment we are discussing should not have been made would be to return to the highly technical and extremely rigid rules of the common law relating to procedure. See 1 Enc. Pl. & Prac. 515, 516; *Maddox* v. *Thorn*, 8 C. C. A. 574, 60 Fed. 217; *Morgan* v. *Smith*, 95 N. C. 396; *Perine* v. *Grand Lodge*, (Minn.) 50 N. W. Rep. 1022; *Lake Erie & W. R. Co.* v. *Town of Boswell*, (Ind. Sup.) 36 N. E. Rep. 1103; *Meyer* v. *State*, (Ind. Sup.) 25 N. E. Rep. 351.

It is true that the case is very closely assimilated to the case of an amendment by which the name of a sole plaintiff is stricken out, and the name of another plaintiff is inserted in its place. There is authority for the proposition that such an amendment is not within the statute; that the action must be dismissed, and a new suit commenced. *Wilson* v. *Kiesel*, (Utah,) 35 Pac. Rep. 488; *Wood* v. *Insurance Co.*, (Mich.) 56 N. W. Rep. 8; *Davies* v. *Mayor, etc.*, 14 N. Y. 527, 528; *State* v. *Rottaken*, 34 Ark. 144-157, 158; *Pickens* v. *Oliver*, 32 Ala. 626; *Tarver* v. *Smith*, 38 Ala. 135; *Liebmann* v. *McGraw*, (Wash.) 28 Pac. Rep. 1107. But the action, before the amendment was made, purported to be carried on in the interests of the Northern Pacific Railroad Company to condemn for the benefit of that company the property in question. The receivers were named as the formal plaintiffs. But it was apparent from the complaint that the real party in whose behalf the action was prosecuted was the company itself, the receivers being named in the pleadings as the temporary custodians of the company's property. Under the circumstances of this case, we regard the amendment allowed as within the letter and spirit of our statutes relating to amendments. Nor do we lack the support of authority in placing this construction upon the statute. *State*

v. *Baker*, 38 Wis. 71; *Buckland* v. *Green*, 133 Mass. 421; *Winch* v. *Hosmer*, 122 Mass. 438; *Costelo* v. *Crowell*, 134 Mass. 280; *Wood* v. *Circuit Judge*, (Mich.) 47 N. W. Rep. 1103; *Morford* v. *Diffenbacker*, (Mich.) 20 N. W. Rep. 600; *Kinney* v. *Harrett*, (Mich.) 8 N. W. Rep. 708; *Wellman* v. *Dismukes*, 42 Mo. 101; *Suber* v. *Chandler*, 28 S. C. 382. See, also, *Weaver* v. *Young*, 37 Kan. 70, 14 Pac. Rep. 458; *Miles* v. *Strong*, (Conn.) 22 Atl. Rep. 959; *Denton* v. *Stephens*, 32 Miss. 194; *Stratton* v. *Taylor, Id.* 201; *Lombard* v. *Morse*, 155 Mass. 136, 29 N. E. Rep. 205; *Wilson* v. *Welch*, 157 Mass. 77, 31 N. E. Rep. 712; *Insurance Co.* v. *Mueller*, 77 Ill. 22; *Lake Erie & W. R. Co.* v. *Town of Boswell*, (Ind. Sup.) 36 N. E. Rep. 1103; *Henry* v. *Sansom*, (Tex. Civ. App.) 21 S. W. Rep. 71; *Wood* v. *Baker*, 38 Wis. 71; *Railroad Co.* v. *Bedell*, (Ga.) 15 S. E. Rep. 676; *Estes* v. *Thompson*, (Ga.) 17 S. E. Rep. 98; 5 Enc. Pl. & Prac. pp. 466, 468, 538, and notes,

We are of the opinion that the trial court might have stricken out the names of the receivers (assuming that they were not proper parties plaintiff,) and inserted the name of the Northern Pacific Railroad Company. But the names of the receivers were not stricken out. If they were not proper parties, no harm could result to the defendants from their names remaining upon the record in the case. If they were proper parties, then it was not error for the court to leave them in the case as parties plaintiff.

It is alleged that the court erred in permitting the amendment of the complaint, after verdict, setting forth the authority of the receivers to institute all necessary legal proceedings. But, in our judgment, this amendment was unnecessary, and therefore harmless. It was not necessary to aver in the complaint that the receivers had been given authority to institute the action, for they were not the real plaintiffs. As the law would not allow them to institute a condemnation action, it would be idle to allege in the complaint that they had been given such authority by the court that appointed them. But assuming that the receivers were necessary parties plaintiff, and that the complaint must show that they had been empowered to institute such a proceeding, still we

fail to discover how any prejudice resulted to defendants from the amendment of the complaint, inserting an allegation as to the receivers' authority to commence the action. While this was done after verdict, yet the defendants were allowed to put in issue this new allegation. It was not an issue which the jury had any right to pass upon. It was purely a question for the court. The sole power of a jury in proceedings of this character is to assess the damages. The defendants denied the allegation as to the receivers' authority to bring the action, and evidence to establish such authority was introduced. This evidence consisted of the order appointing the receivers. In this order they were given power "to institute and prosecute all such suits, actions, and proceedings as may be necessary, in their judgment, for the proper protection of the property and the trust vested in them." No attempt was made to overcome the legal effect of this order, and the authority of the receivers to institute or join in such condemnation proceedings as the local law would permit them to institute or join in was clearly conferred upon them by this order

It is next urged that the statutes relating to eminent domain do not authorize the condemnation of the riparian rights of the owner of land through which flows a water course. The provisions of our statutes on this subject do not sustain this contention. Rev. Codes, § 5958, Subd. 6, declares that "all classes of private property not enumerated may be taken for public use when such taking is authorized by law." Rev. Codes, § 2947, Subd. 3, provides that railroad corporations authorized to' operate or maintain railroads in this state shall have power to acquire, under the provisions of the chapter on eminent domain, all such real estate and other property as may be necessary for the construction, maintenance, and operation of the road, etc. Here is distinct authority to condemn any kind of property that is necessary. See, also, 1 Ror. R. R. 444; *Old Colony & F. R. Co.* v. *Inhabitants of Plymouth*, 14 Gray, 155. Surely, it will not here be claimed that the riparian rights of these defendants do not con-

stitute property.   If they are not property, on what principle can
the defendants claim damages for their destruction?   Indeed,,
there is eminent authority for the doctrine that such a right is'
real estate.   *Johnson* v. *Jordan*, 2 Metc. (Mass.) 234.   See, also,
*Water Co.* v. *Forbes*, 62 Cal. 182.   That real property may be
condemned does not admit of question.   Rev. Codes, § 2947,
Subd. 3; *Id.*, § 5958, Subd. 1.   Under statutes similar to ours,
riparian rights have been condemned.   *Water Co.* v. *Forbes*, 62
Cal. 182.   See, also, *Rumsey* v. *Railroad Co.*, (N. Y. App.) 30 N.
E. Rep. 654.   It was not necessary to condemn the land through
which flows the portion of the river to be diverted from its
channel.   There appears to be no necessity for the taking of
the real estate itself; and it is a familiar principle of law that the
wresting of private property from the hands of its owner for a
public use should never be permitted to extend beyond such
property or such interest in property as is reasonably required to
subserve the public interests.   It would be unnecessarily burden-
some to the company, and inexcusably oppressive against these
defendants, to compel or even allow the company to take the fee
of the lands involved, when the public use requires merely that
they should be damaged, and not that they should be taken
wholly from their owners.   That the company could, under our
statute, condemn the riparian rights without also taking the fee
of these lands, does not admit of doubt.   See *Water Co.* v.
*Forbes*, 62 Cal. 182.

It is also contended that, if our statute permits the diversion of
a water course, such a statute is repugnant to the state constitu-
tion.   Section 210 of the constitution provides that "all flowing
streams and natural water courses shall forever remain property
of the state for mining, irrigation and manufacturing purposes."
It was conceded in the argument of this case that this section of
the original law does not impair the property rights of a riparian
owner in the waters of a natural stream.   At common law, the
owner of land through which a non-navigable stream flowed was
possessed of the title to the bed of the stream, as well as the

right to a reasonable use of the water. The land under the water was his. The right to a reasonable use of the stream was as much his property as the land itself. The course of the stream could not be so diverted as to cause it to cease to flow in its accustomed channel upon his property. Gould, Waters, § 4; Ang. Water Courses, § § 1-4; *Green Bay & M. Canal Co.* v. *Kaukauna Water Power Co.*, 90 Wis. 370, 61 N. W. Rep. 1121, and 63 N. W. Rep. 1019, and cases cited. These doctrines of the common law were in force in the Territory of Dakota at the time of the adoption of the constitution of this state. By virtue of them, the riparian owners in the territory were vested with the specified property rights in the bed of all natural water courses, and in the water itself. Such rights were under the protection of the fourteenth amendment to the federal constitution, which protects property against all state action that does not constitute due process of law. It follows that § 210 of the state constitution would itself be unconstitutional in so far as it attempted to destroy those vested rights of property, if it should by construction be given a scope sufficiently wide to embrace such matters. For this reason, we feel constrained to hold, despite its broad language, that § 210 was not framed to divest the rights of riparian owners in the waters and bed of all natural water courses in the state.

On the other hand, we do not wish to be understood as expressing such a view as to its proper interpretation as would utterly emasculate it. So far as it can have constitutional effect, it should be construed as placing the integrity of our water courses beyond the control of individual owners. Should all the riparian proprietors along the course of a stream so join in the sale of their riparian rights as to work an utter destruction of the stream so far as its channel was within the bounds of this state, it might be that the sovereignty of the state could invoke this provision of the constitution against such attempted annihilation of the water course. But no such case is before us. After the diverson sought to be accomplished by the company by this

proceeding has been consummated, the substantial integrity of the Heart river will not be impaired. Every drop of water that flowed in its channel before will still continue to flow therein. The channel itself will be altered for only a short distance compared with the length of the stream itself. This slight change, of course, will not remove the river beyond the limits of the state. If, in the future, it becomes desirable to take the waters of this stream for public use, those waters will be found to be within the reach of the sovereign power as fully then as now. The diversion which the company is essaying to make effects only rights of private property. For these rights, compensation must, of course, be made. But, when made, there stands no obstacle in the way of their destruction, for such rights the constitution does not attempt to protect against the exercise of the power of eminent domain. Had one person owned all of the land in question, there could be no doubt about his right to cut off a portion of the river on his own land, and carry it across by an artificial ditch to the channel further down the stream, just as the railroad company proposes to do. Nor can there be any question touching the rights of the owner of the land through which flows that section of the stream sought to be diverted to sell, to the owners of the land on which the ditch in question is to be dug, the right to turn the stream from its old channel into this artificial conduit, that its waters might be discharged into the old channel at a point further down the stream, thus stopping the flow of the river upon the lands over which it was wont to be current. If this right can be sold, it can be condemned. *Water Co.* v. *Forbes*, 62 Cal. 182.

We next come to the consideration of the question of necessity. It is apparent that our statute does not contemplate the submission of any question to a jury, save the question of compensation. The constitution requires this question of compensation to be left to a jury. Const. § 14. Section 5955 of the Rev. Codes, declares, in the language of the constitution, that "compensation shall in all cases be ascertained by a jury unless a jury is waived."

In the absence of the provision contained in § 14, a jury trial in such cases could not be demanded as a constitutional right. The owner of property taken for public use has no constitutional right to submit to a jury any question arising in the proceedings, unless the constitution specifically so declares. The guaranties of the right to a trial by jury, and that property shall not be taken without due process of law, found in the various state constitutions, do not confer upon the citizen the right to a jury trial in such cases. Cooley, Const. Lim. 563, side paging; *People* v. *Smith*, 21 N. Y. 595; *Ames* v. *Railway Co.*, 21 Minn. 241-291; *Manufacturing Co.* v. *Garland*, 25 Fed. Rep. 521; *Koppikus* v. *Commissioners*, 16 Cal. 248; *Ex parte Reynolds*, (Ark.) 12 S. W. Rep. 570; *Beekman* v. *Railway Co.*, 3 Paige, 45; *U. S.* v. *Jones*, 109 U. S. 519, 3 Sup. Ct. 346; *Ligat* v. *Com.*, 19 Pa. St. 456-460; *Railroad Co.* v. *Trout*, 32 Ark. 17; *Johnson* v. *Railroad Co.*, 23 Ill. 202. In most of the states, proceedings to condemn property for public use do not take the form of civil actions, but are classed as special proceedings, and are more or less summary in character. In not a few of the states the question of necessity is not made a judicial question, either by the constitution or by statute. True it is that the courts can always inquire into the nature of the use for which the property is to be condemned for the purpose of determining whether such is, in fact, a public use. Cases cited in 4 Rap. & M. Ry. Dig., at page 457; Lewis, Em. Dom. § 158. But, that proposition being once judicially established, it is within the exclusive province of the legislature to pass upon the question of necessity, unless it has declared that that shall be a judicial question, or such a provision is found in the constitution itself. *O'Hare* v. *Railroad Co.*, 139 Ill. 151, 28 N. E. Rep. 923; *State* v. *Rapp*, 39 Minn. 65, 38 N. W. Rep. 926; *Trust Co.* v. *Harless*, 29 N. E. Rep. 1061; Lewis, Em. Dom. § § 61, 62, 571; Cooley, Const. Lim. 538, side paging. In this state the legislature has seen fit to take it out of the power of any person or corporation to settle the question of necessity, and to trust the determination of that issue to the judicial branch of the govern-

ment. Rev. Codes, § 5959. Making it a judicial question does not render it a question for trial before a jury. Nor can the right to have a jury pass upon this point be inferred from the fact that in this state the power of eminent domain is to be exercised by proceedings which shall take the form of a civil action. All civil actions are not triable by a jury, and in transferring these proceedings, in which the right to a jury trial had never been enjoyed save in states in which an exceptional policy had been adopted, to the category of civil actions, the utmost purpose of the legislature was to affect matters of procedure, and not to vest in the citizen the substantive right to a jury trial of the whole case. To the extent that the lawmaking power was constrained by the constitution, it provided for a jury trial; but it is very significant that the statute expressly gives the right to a trial by jury only with respect to the single question of compensation. The maxim "*Expressio unius exclusio alterius*," applies to the construction of this statute. It is evident that the legislature thought that the right to a jury trial of the issues had not been conferred by other provisions of the law. On no other theory can the explicit declaration of the statute that the compensation should be ascertained by a jury be accounted for. If we are to find elsewhere authority for submitting the whole case to a jury, why was the same ground covered a second time with respect to the element of compensation? As the issues in such proceedings were not wont to be tried by a jury, as, with the exception of the matter of compensation, there is no constitutional right to such a mode of trial, we cannot infer from the mere fact that the proceeding in this state is to assume the form of a civil action that a jury trial of the whole case was designed. Such radical change in the manner of settling the controverted points in such a proceeding must not be built up on a mere inference in the face of an implication so strong as to be practically equivalent to an express declaration that no other question except that of compensation should be submitted to a jury. Section 5965, Rev. Codes, furnishes additional evidence to our minds that it was

intended to leave only the matter of compensation to the jury for settlement. And section 5420, Rev. Codes, is conclusive on this point. It declares that every issue, except those arising in an action for the recovery of money only, or specific real or personal property, must be tried by the court.

Having reached the conclusion that the question of necessity need not have been submitted to the jury, and it appearing from the record that the trial judge found that question of fact in favor of the plaintiffs, it is evident that the inquiry whether the charge of the court to the jury on this point was correct is unimportant. But in our judgment there was no error in the charge of the court on this point.

It is further urged that the evidence does not warrant a finding of necessity. Under the statute it is not essential that the property taken should be necessary for the construction of the road. It is sufficient if it is necessary for the maintenance and operation of such road. Rev. Code, § 2947, Subd. 3. We have carefully analyzed the testimony in the case, and have reached the conclusion that the trial judge was fully warranted in making the finding on the question of necessity which he did. The object to be affected by these condemnation proceedings is to place the railroad company in a position where it can increase the safety of its track by constructing a solid embankment at the two points where the road is carried over the Heart river, by means of two bridges. That in the spring season the safety of these structures is endangered by ice gorges is shown by the testimony of competent civil engineers. Their evidence tended to show that the danger of injury, damage, and destruction to passengers, employes, and freight would be considerably diminished by constructing a solid embankment where the bridges in question now stand; and that, independently of such damage being done to persons or property, there was danger every spring that traffic would be temporarily suspended by a break at this point in the line of the road, through the demolition of one or both of these bridges by the impact of large fields of moving ice in times of high water,

resulting from gorges. If the evidence is true, it is apparent that public interests will be subserved by the change in the roadbed which is projected, and this change cannot be affected unless the property involved in the case be condemned. The question is not one merely of economy. The result will not be simply a saving of money to the railroad, but an increase in the safety of travel over this portion of the company's line. That property the taking of which will enable the railroad company to enhance the safety of passengers and property intrusted to its charge, as a common carrier, and also of its employes, is property necessary for the maintenance and operation of the railroad, we have no doubt. There is and can be no more beneficial purpose for which the power of eminent domain can be exercised than that of augmenting the security of persons and property in the hands of common carriers. Property needed to increase the safety of those who travel upon our railroads is necessary for the maintenance and operation of such railroads, within the meaning of our statute, which must have a reasonable construction. See *Milwaukee & St. P. R. Co.* v. *City of Milwaukee*, 34 Wis. 271-277.

Assuming that the condemnation of the property involved was necessary to render safe at these two points the transportation of passengers and freight, then the proposition that there was a necessity for the taking of such property for the operation and maintenance of the road, within the meaning of the statute, would not seem to admit of doubt. It is true that there was evidence that the bridges could, so far as the superstructure is concerned, be lifted above the point of danger, by elevating the roadbed for a considerable distance. But the chief engineer of the road, who testified in the case, and whose testimony at this point does not appear to have been controverted, stated under oath that it would be impracticable to raise the grade the necessary height, and yet operate the trains; that it would be impracticable to make the change that way. He testified, further, on this point, as follows: "There is no other practicable way from an engineering standpoint to insure the safety of travel and freight that is

passing over the line of this road at these points, save by making the improvements that are proposed. It is policy to keep the ground low, to give the water a chance to flow over the whole valley. If we raise the grade, it is going to carry the water through one spot, and we could not get the bridges high enough to take all the water." At another point in his testimony, he stated that the only way of rendering these points of intersection with the river safe for traffic, and of removing all danger, was to get rid of the bridges in question. It is thus made apparent that the trial court was warranted in finding that there was no other practicable way of getting rid of the danger at these two points but by the removal of these bridges and the construction in their place of solid embankments of earth. But, even if the evidence made imperative the conclusion that the superstructure of these bridges could be lifted beyond the reach of movable fields of ice, still the fact would remain that these two links in the road would be by no means rendered as safe for travel as by taking out the bridges altogether. The evidence shows the river to be very tortuous in its course. Like all streams in a level country, it has many sharp bends and these, as the evidence discloses, facilitate the formation of dangerous ice gorges. The piers of these bridges would, after the superstructures had been elevated, still be battered by these huge masses of moving ice. The dangers from this source would not be diminished in the least; and all the danger from the abrading action of a great volume of swiftly running water, pouring tumultuously through these openings between the embankments on either side, would, so far from being decreased, be augmented, because all the water would be forced by the higher embankment to flow through the openings, instead of spreading over a wider surface, and finding other places for passage. The chief engineer testified that it is hard to ascertain whether water is washing out piling or approaches, or doing damage to the piers, when the water is high; that there is always more or less of an element of danger of that kind in times of ice gorges and floods. "Sometimes," he testified, "the ice does damage them

[the bridges] when it does not get up to the guards. It is likely to damage the piers. We have had to rebuild the piers a long time before we did the bridges. Generally, it is the other way. It has damaged the piers a number of times." At another point in his testimony, he said: "You cannot always tell by an inspection whether an injury is being done when the ice gorges are forming and high water is present. This fact renders travel very dangerous during these times of high water, both for passengers and freight. We never know whether a train is going to get across safely or not." It is obvious from this and other evidence which might be quoted that the dangerous character of those bridges would not be materially altered by their higher elevation above the water. The chief engineer positively asserts that these bridges are more dangerous than ordinary bridges, on account of the action of that river. There is nothing in this testimony which bases their dangerous character solely on the fact that the superstructures are so low as to be struck at high water by moving ice. The whole case shows that their dangerous character is owing to the peculiarities of the stream they span. We will content ourselves with one further quotation from the testimony of one of the railroad engineers: "The stream, as it is crossed by the railroad between crossing 2 and 3, forms a complete loop south of the track. The river bed makes, at least, two abrupt changes in this direction during that time. It is always more liable for a gorge to form in the bend of the river than it would if it was straight. The loop, from the place where we start to build the new channel following the old bed of the river, to the place where it is intersected again by the channel, is probably a mile and a half or two miles. Following the present bed, it is two miles. There are two sharp turns in the river at that distance. One is at the third crossing, and the other one directly south of the second crossing. These bridges are in danger by forming of ice gorges in the spring when the water goes out. The danger is of the ice gorge, tearing away the bridge. It would be hard to ascertain if the water was washing

out piling or approaches, or doing damage to the piers when the water is high. There is always more or less of an element of danger of that kind in times of ice gorges and floods. There would, I should judge, be necessary dangers and undiscoverable dangers, to both the passenger and freight traffic of the road, at the times when the ice gorges had formed at or in the vicinity of these two bridges. I have had experience in railroad engineering for about 12 years. In my opinion, good engineering and good railroading require the digging of the channel as proposed by the company in these proceedings, and, by diverting the channel, getting rid of these two bridges. I should think that that would conserve the safety of the business of the railroad to do that. I consider that that change should be made for the safety of the traffic, and to avoid loosing those two bridges in the case of an ice gorge."

On a review of the whole case, we are satisfied that the public interests will be subserved by the condemnation of the property in question, to the end that these two dangerous points in the railroad may be rendered safe; and we are also of the opinion that in no other way can this increase in safety be as effectually accomplished. That the necessity for the taking of the property involved is therefore established is amply supported by authority. *Colorado E. R. Co.* v. *Union Pac. Ry. Co.*, 41 Fed. Rep. 299; *Forney* v. *Railroad Co.*, (Neb.) 36 N. W. Rep. 806; *Railway Co.* v. *Hooper*, (Cal.) 18 Pac. Rep. 599-603; *Commissioners* v. *Moesta*, (Mich.) 51 N. W. Rep. 903; Lewis, Em. Dom. § 393, note 4, and cases cited; *Forney* v. *Railroad Co.*, (Neb.) 33 Am. & Eng. Ry. Cas. 162, note (36 N. W. Rep. 806;) *Taylor* v. *Railroad Co.*, 6 Cold. 646. See, also, *New York Cent. & H. R. R. Co.* v. *Metropolitan Gas Light Co.*, 63 N. Y. 326; *Milwaukee & St. P. R. Co.* v. *City of Milwaukee*, 34 Wis. 271-277.

We come to the final point in the case. It is urged that the compensation assessed by the jury is inadequate, under the evidence. With respect to the land owned by the appellants Kasson and Strauss, we are clear that the claim of insufficiency

of the evidence cannot be sustained. It is true that the jury fixed a much lower sum as the measure of damages sustained by these parties than some of the evidence would have warranted. But the verdict was, so far as their property was concerned, within the limits of the evidence, and must therefore be sustained. The jury, in arriving at their conclusion, had the benefit of a personal inspection of all the property involved. In the course of the trial, the court directed that the jury be conducted by the sheriff to the premises in question, for the purpose of examining the same. This was done. The jurors, therefore, in forming their judgment as to the damages sustained by all the parties, were aided by a personal inspection of the property, and, in the light of what they saw, could determine what weight was to be given to the conflicting opinions of the several witnesses as to the damages which the various parties would sustain. But these observations do not apply to the Goff land. It is true that the jury inspected this land also, but the verdict with respect to two parcels of this land is without support in the evidence; *i. e.* the S. ½ of S. E. ¼ of section 30, and the S. ½ of the S. E. ¼ of section 29. In the case of each of these parcels, the compensation allowed by the jury was less than the lowest damages testified to by the witnesses. While a jury is not bound to shut its eyes to what it sees when an inspection is allowed by the court, and while it may, even on a matter of opinion as to value and damages, weigh the evidence of experts in the light of its own examination of the property, the verdict must find support in some of the evidence. It cannot fix the value of the damages above the highest or below the lowest figure which is fixed by expert evidence, unless there are other circumstances proved in the case which would justify it in so doing. If the value of a tract of real estate is in controversy, and the only evidence is that of experts, who differ in their opinions as to its value, the jury may not disregard all the evidence in the case, and fix its value below the lowest or above the highest estimate of the experts, despite the fact that they may have inspected the land under the order of

the court. We regard this as the sounder and safer rule, although there are authorities to the contrary. It is certainly buttressed more strongly by the decisions of able courts than the doctrine which is opposed to it. *Peoria Gaslight & Coke Co.* v. *Peoria Terminal Ry. Co.*, (Ill. Sup.) 34 N. E. Rep. 550; *Railroad Co.* v. *Parsons*, (Kan. Sup.) 32 Pac. Rep. 1083; *City of Topeka* v. *Martineau*, (Kan. Sup.) 22 Pac. Rep. 419; 1 Thomp. Trials, § 895; *Heady* v. *Turnpike Co.*, 52 Ind. 117; *Railroad Co.* v. *Bowen*, 40 Ind. 545; *Close* v. *Samm*, 27 Iowa, 503; *Railroad Co.* v. *Mouriquand*, (Kan. Sup.)25 Pac. Rep. 567; *Wright* v. *Carpenter*, 49 Cal. 608. That we have power to reverse the order in part, and affirm as to the other parties, we have no doubt. See Rev. Codes, § 6528; *Railroad Co.* v. *Galgiani*, 49 Cal. 139; *Railroad Co.* v. *Hilderbrand*, (Ill. Sup.) 27 N. E. Rep. 69.

There is no occasion for opening up the whole case even with respect to the defendant Goff. The order of condemnation is reversed so far as it affects her property, and a new trial is ordered of the single issue of compensation to be awarded her for the damages she will sustain by reason of the proposed diversion of the stream from its channel, so far as such diversion affects the value of her property. Upon this compensation being fixed by a jury, a new order of condemnation will be entered with respect to her property rights in the Heart river, as it flows over her land. No other question will be submitted to the jury, or tried by the court.

The order of condemnation is in all other respects affirmed. All concur.

(69 N. W. Rep. 570.)

NOTE—Pleadings may be amended to correspond with the proofs. *Moore* v. *Booker*, 4 N. D. 543, 62 N. W. Rep. 607; *Anderson* v. *Bank*, 5 N. D. 80, 64 N. W. Rep. 114; *Johnson* v. *Burnside*, 3 S. D. 230, 52 N. W. Rep. 1057; *Jenkinson* v. *City*, 3 S. D. 238, 52 N. W. Rep. 1066. The mode of amending pleadings recognized by our practice is to rewrite the pleading so that all the parts shall be in one instrument complete in itself. *Caledonia G. M. Co.* v. *Noonan*, 3 Dak. 189, 14 N. W. Rep. 426. Essential facts should not be pleaded by way of exhibit only. *Wright* v. *Sherman*, 3 S. D. 290, 53 N. W. Rep. 425. An irregularity in the mode of amending a pleading cannot be taken advantage of for the first time on appeal.

*Caledonia G. M. Co.* v. *Noonan*, 3 Dak. 189; *Wright* v. *Sherman*, 3 S. D. 290. Where parties stipulate that pleadings may be amended to correspond with the evidence, such amendment should be made before appeal is taken to the Supreme Court. *Farrington* v. *N. E. Inv. Co.*, 1 N. D. 102, 45 N. W. Rep. 191. The allowance of an amendment so as to permit averments as to the general usage of the language was improper. *Power* v. *Bowdle*, 3 N. D. 122, 54 N. W. Rep. 404. Under § 4938, C. L. (5297, R. C.) It is the rule to allow amendments to refuse is the exception. *Kelsey* v. *C. & N. W. R. Co.*, 1 S. D. 80, 45 N. W. Rep. 204. And where a defect in pleading can be cured by amendment under § 4938, C. L. (§ 5297, R. C.) and no demurrer has been interposed, the evidence should be received and amendment made on trial. *Johnson* v. *Burnside*, 3 S. D. 230. As where demand before suit was necessary, the demand was in fact made, but no demand was averred, and the pleading was not demurred to *Jenkinson* v. *City*, 3 S. D. 238. Unless advantage of a defective pleading is taken by demurrer, great indulgence of amendment will be permitted upon the trial. *Jenkinson* v. *City*, 3 S. D. 238. Where a pleading however is fatally defective in a particular incapable of amendment, the objection to it may be taken at any stage of the proceedings. *Johnson* v. *Burnside*, 3 S. D. 230, 52 N. W. Rep. 1057. A defendant will not be permitted to amend his answer after trial to plead noncompliance by plaintiff with § § 4066, 4068, C. L. (§ § 4410, 4412, R. C.;) *Heegard* v. *Dak. L. & T. Co.*, 3. S. D. 695, 54 N. W. Rep. 656. A defect in pleading as to nonjurisdictional fact cannot be first urged upon appeal. *Paulson* v. *Ward*, 4 N. D. 100, 58 N. W. Rep. 792. A summons may be amended. *Gans* v. *Beasley*, 4 N. D. 140, 59 N. W. Rep. 714. But an affidavit for attachment cannot be amended in a matter of substance, *Id.* District Court cannot amend record on appeal after same has been certified to the Supreme Court. *Moore* v. *Booker*, 4 N. D. 543, 62 N. W. Rep. 607. But so long as the record is in the District Court, that court may amend it even after appeal. *Coulter* v. *G. N. R. Co.*, 5 N. D. 568, 67 N. W. Rep. 1046. The court has power in a criminal case to amend its record so as to set forth the proceedings as they were actually had, even after the term. *Ty* v. *Christensen*, 4 Dak. 410, 31 N. W. Rep. 847. The Supreme Court in remitting a case may direct that a pleading may be amended in the trial court, and such power should be liberally exercised in furtherance of justice. *Evans* v. *Hughes County*, 4 S. D. 33, 54 N. W. Rep. 1049.