[File No. 6647.]

O. M. JOHNSON, Respondent, v. ARMOUR & COMPANY, a Corporation, Appellant.

(291 N. W. 113, 127 A.L.R. 828.)

Opinion filed March 21, 1940.

*Fuller & Powers,* for appellant.

*Conmy & Conmy* and *P. B. Garberg,* for. respondent.

Burr, J.   The plaintiff alleges that from July 1, 1932, to July 1, 1937, he was the owner of a tract of land bordering on the Sheyenne River; that the defendant operated a packing plant above stream and despite protest and the statutes of this state, knowingly discharged an enormous amount of sewage into the stream, grossly polluting it, generating foul gases and stench, making the water unfit for use, and rendering it impossible for the plaintiff to rent his property or live in decency and comfort on the place, and his property was so injured and damaged that he was compelled to sell it at a loss, all to his damage in the sum of $3,000.

In its answer, after setting up a general denial, the defendant sets

forth what is termed as "separate, and distinct defense," alleging that on December 2, 1925, one Hans Sorenson was the owner of the real property involved, and entered into a contract in writing with the defendant, permitting the defendant to discharge his sewage into the stream, that this contract was recorded in the office of the Register of Deeds on December 8, 1925, that the plaintiff purchased this land from Sorenson July 1, 1932, and on June 1, 1937, reconveyed it to Sorenson; that the defendant was the owner of "Tract No. 2 and Tract No. 3," and these tracts were a portion of the entire premises involved; that the consideration was paid, the contract had never been terminated or cancelled and the plaintiff was the successor in the interest of Sorenson, and as such, is estopped to maintain a suit for damages against the defendant.

It is not necessary to set forth the contract in full. The salient features show that Hans Sorenson was the owner of the land involved herein known originally as "Tract Number 1" and that the defendant became the owner of a portion thereof known as Tract No. 2 and Tract No. 3, and used these tracts for the purpose of operating and maintaining a packing plant which included not only the plant proper, but also the hotel and houses occupied by its employees; that water and ice had heretofore been taken by the present and the former owners of Tracts Nos. 2 and 3, and waste products and sewage and other refuse matter were discharged by the defendant into the river, and the defendant, as first party, agreed with Sorenson, as second party, that on or before December 1, 1925, it would erect and maintain a service wire, with the proper meter attached thereto, "to furnish the second party, his heirs, administrators, successors and assigns, electric current of the voltage generated by the first party in connection with the use of its properties . . . for a period of fifteen years . . . to a quantity and amount, namely, of 3,000 kilowatts annually free and without charge to the second party, his heirs, administrators, successors and assigns."

The contract further provided that at the expiration of the fifteen-year period, which was to begin January 1, 1926, "if current is conveniently available thereto in excess of the necessary uses of the first party, . . . . such current . . . will be furnished to the second party to an amount, namely, of not exceed-

ing 3,000 kilowatts per year at meter rates based upon the rate charged to consumers for like service by the public utility then operating a public lighting system and service in the city of Fargo. . . . If the said first party shall fail or be unable to furnish the said second party, his heirs, administrators, successors and assigns the electric current as provided for herein and shall terminate such service then the first party . . . shall be obligated to pay the second party, his heirs, administrators, successors and assigns, the sum of One Thousand ($1,000.00) Dollars stipulated and agreed damages but first party, its successors and assigns, shall be entitled nevertheless to continue the enjoyment of the rights, easement and benefits hereby granted to first party, . . . without further or other liability of any character to second party, his heirs, administrators and assigns, provided further that the liability of the first party . . . to pay to the second party, his heirs, administrators, successors, or assigns, said stipulated damages of One Thousand ($1,000.00) Dollars shall terminate and expire January 1st, 1941, and provided further that the liability of the first party, its successors and assigns . . . shall not be based upon temporary interruption of electric service."

The contract contains the following further provision: "Except for the payment of One Thousand ($1,000.00) Dollars stipulated damages, upon the conditions set forth herein, the second party, his heirs, administrators, successors and assigns, hereby waives and relinquishes and releases the first party, its successors and assigns from any and all claims for damages now existing or hereafter arising by reason of the exercise of the rights and easements herein granted and given to the first party, its successors and assigns.

"The said second party, his heirs, administrators, successors and assigns does hereby give and grant to the first party, its successors and assigns, in perpetuity and without reversion or remainder . . ." certain rights and easements, among which was the right of the defendant "to discharge into the waters of the Sheyenne River waste products, sewage and refuse material from any point on the property of Armour and Company known as Tracts 2 and 3 above described, and to permit the same to be carried off by the flow of said stream through the premises of the second party described as Tract No. 1 . . . ;" to take such quantities of water as may be necessary

for the use of its plant, and, as a further consideration, the first party would furnish and deliver to the second party an automatic electric pump.

The contract further provided that the same could be cancelled and terminated by either party by the execution of a written notice of cancellation served upon the other party within six months from the date of the agreement.

The plaintiff demurred to the answer on the ground "that upon its face it does not constitute a counterclaim or defense." The district court sustained the demurrer and defendant appeals. Upon this appeal we consider the allegations in the answer as admitted for the purpose of demurrer, and we must of necessity take into consideration the facts set forth in the complaint so far as they are admitted.

According to the pleadings the defendant continued to furnish to the successor in interest the electric current required by the contract and did furnish it all of the time that the plaintiff was the owner of the property involved, that is, up to June 1, 1937. This action was commenced in the latter part of December, 1938, more than a year after the plaintiff ceased to own the land in question. Under the contract the defendant could continue to furnish the electric current until January 1, 1941. It was to furnish the current to Sorenson and his heirs, administrators, successors, and assigns. The defense says the contract was complied with. The contract was on record when the plaintiff purchased the land. Sorenson could have terminated the contract by giving to the defendant notice of his election to terminate within six months after the date of the contract; but this was not done.

The contract was executed because of the liability of the defendant for damages which might accrue to Sorenson so as to reduce the value of the land. The clear import of the contract is that, so far as Sorenson was concerned, and because of the consideration given by the defendant, any nuisance created by the defendant on its land could be continued through his land. The pleadings do not show any offer on the part of the plaintiff to pay for the electric current furnished, any refusal to accept the electric current, any demand on his part that the nuisance should be abated, except the rather vague statement in paragraph 3 of the complaint to the effect that the defendant maintained the nuisance "despite prior and repeated protests and objections

from those living along and near the stream, and despite the statutes of the state to the contrary. . . ."

When the plaintiff purchased the land he knew the contract was in existence, and he knew the electric light that was being furnished was the consideration given by the defendant for that contract. Doubtless, when he bought the land from Sorenson, that contract included the electric light service. Apparently, he accepted the electric light service during all the time he owned the land, knowing that it was in lieu of the continuing damages.

It is not an unreasonable assumption that when he purchased the land, the agreement as to the purchase price took into consideration the existing situation, the right of continuance under the contract so far as Sorenson was concerned, and the purpose for which the electric service was given. It was a subject matter which could be the basis of the contract set up in the answer.

The trial court in its memorandum opinion exhaustively reviews the facts and the issues raised by the pleadings and the propositions discussed in the briefs. The plaintiff, in support of his demurrer, alleges that the contract is one which "offends against the statute of perpetuities and is void;" that in any event, the covenants in said contract are "personal to Sorenson;" that the contract was in violation of the statute, and against public policy; and this general allegation that whatever easement was granted, if any, "is not broad enough to prohibit recovery under the facts alleged in the complaint."

The trial court, in its memorandum opinion, held that the contract was not void as offending the statute against perpetuities, or, in other words, that it was not a "lease of agricultural land for a longer period than ten years," in which a rent or service has been reserved.

The court was correct in this view. Section 5289, Comp. Laws 1913, provides "no lease or grant of agricultural land for a longer period than ten years, in which shall be reserved any rent or service of any kind shall be valid. . . ." Such provision does not cover the facts in this case. As shown in Wegner v. Lubenow, 12 N. D. 95, 101, 95 N. W. 442, 444, "There is a marked difference between a consideration paid for a life estate and 'rent reserved,' as that term is used in this section." The rent paid for agricultural lands, as pointed out in this case cited, must "be construed in its original and tech-

nical sense, as profit arising out of the land and payable periodically." As shown in Martin v. Royer, 19 N. D. 504, 507, 125 N. W. 1027, 1028. "Rent is compensation for the use of land." The term "rent" is fully defined in Kuiper v. Miller, 53 N. D. 711, 207 N. W. 489, 490. Thus the trial court held that whatever amount was paid to Sorenson was not the reservation of a rent or service within the meaning of this section of the statute.

The demurrant argued that this contract imposed a burden on the real estate for the benefit of the grantor personally, and, therefore, must be construed as a purely personal covenant. The argument is made that such a covenant, while it might preclude Sorenson from asserting rights, cannot be made to apply to damages which would accrue after Sorenson transferred his land.

The trial court held that this contract was not one purely personal to Sorenson. In this the court was correct. Whatever interest Sorenson granted to defendant is in the nature of an easement. Section 5330, Compiled Laws of 1913, in dealing with servitudes, states specifically that such "may be attached to other lands as incidents or appurtenances," and are then called easements. In that event we are not concerned with the exact classification of the easement. See Jersey Farm Co. v. Atlanta Realty Co. 164 Cal. 412, 415, 129 P. 593, 594. An easement is a charge or burden upon one estate, the servient, for the benefit of another, the dominant. Comp. Laws, §§ 5330 and 5332. See Gray v. McWilliams, 98 Cal. 157, 32 P. 976, 21 LRA 593, 35 Am. St. Rep. 163; Jones v. Berg, 105 Wash. 69, 177 P. 712, 715. It is a burden imposed on the land or the estate, and not upon the person, and is to be "determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." § 5335.

Sorenson, as the owner of the land, had a right to the use of the water forming a definite stream over his land as long as it remained there. § 5341. As against the defendant, he had a right to have it come to him unpolluted by the defendant. As we pointed out in McDonough v. Russell-Miller Mill. Co. 38 N. D. 465, 472, 165 N. W. 504, 505, Sorenson had a "natural right inseparably annexed to the soil itself, which arises immediately with every new division or severance of ownership" to the use of the water in its natural flow. This he could insist upon. But he also could sell his right and grant an

easement over his land. In Bigelow v. Draper, 6 N. D. 152, 162, 69 N. W. 570, 572, we hold that riparian rights constitute property and say "there is eminent authority for the doctrine that such a right is real estate."

The purpose of the agreement was to permit the defendant to drain its sewage through the territory of Sorenson. It has the elements of a drain and where the purchaser of the land has notice of such easement created by the agreement, the interest will run against the servient estate. Schneider v. Cross, 80 Colo. 26, 249 P. 643. The distinction between actions brought to recover damages special to plaintiff because of an alleged nuisance, and an action brought by the plaintiff on behalf of the public is well set forth in Ruthven v. Farmers Co-op Creamery Co. 140 Iowa, 570, 574, 118 N. W. 915, 916. Herein it is shown that where the action of the party which was said to constitute a public nuisance had been done under an agreement and contract to that effect, then the contract, being purely for a private usage, and an agreement that it might be maintained upon a sufficient consideration, is a complete defense.

In Gross v. Bunker Hill & S. Min. & Concentrating Co. 45 F. (2d) 651, 652, the district court holds that "the resulting injury to the land and its appurtenances was agreed to be suffered by the owner thereof, and this agreement was held to be an easement burdening the land in the hands of subsequent purchasers as distinguished from a personal covenant binding only upon the person making the contract." This quotation in the opinion is taken from the decision of the circuit court of appeals in Schwab v. Smuggler-Union Min. Co. 174 F. 305. The whole matter is thoroughly discussed in the decision of the circuit court of appeals in Luama v. Bunker Hill & S. Min. & Concentrating Co. 41 F. (2d) 358, in an action brought by a lower riparian owner for damages caused to realty and livestock by flood water deposits of debris resulting from mining operations of the upper owner. In Luama v. Bunker Hill & S. Min. & Concentrating Co. supra, it was held that an agreement between the upper and the lower riparian owners, giving the former such right to do so, created an easement on the land, and therefore, no damages could be recovered by the subsequent purchaser of the land held by the lower riparian owner.

It is clear from the memorandum opinion that the trial court was

concerned with issues raised by the theory it was a violation of statute to permit the creation and continuance of a nuisance. The trial court does not expressly state that it is void because of this. The learned judge, however, did take this into consideration in discussing easements, servitudes, and dominant and servient estates, for the opinion holds in effect that while the parties had the right to make the contract, nevertheless, the contract did not invest the defendant in this case with a right to make any use of the river other than that which would amount to a reasonable use of the stream, and that this must be taken into consideration in determining claims which might be made by Sorenson or any of his assigns. The trial court laid great stress upon this holding in McDonough v. Russell-Miller Mill. Co. 38 N. D. 465, 165 N. W. 504, supra: "The owner of land traversed by a natural stream may not prevent the natural flow of or pollute the stream, but he may rightfully use the water therein for any reasonable purpose as long as it remains on his land." But the rule is in no way applicable to the case at bar. If this were all that is involved in this case, it would not have been necessary to enter into any such contract. If the right of the defendant under this contract is to be limited to a reasonable use of the stream under the law involved in this Russell-Miller Mill. Co. Case, then the defendant would have that right, even over the objection of Sorenson. In this Russell-Miller Mill. Co. Case, there was no contract of any kind involved. The case dealt with the rights of riparian owners. In the case at bar, the attempt is made on the part of Sorenson to dispose of this very right. Certainly he could do so, and he could so bind his land that, so far as the land itself and the right of the subsequent owner are concerned, this land is subject to the contract. Even if it were contemplated that a nuisance would be created, the settlement of the civil rights which might grow therefrom is not prohibited. It does not in any way affect the right of the state to abate a nuisance. The contract involved does not contemplate, and cannot be construed to contemplate that the only use which the defendant could make of the stream, so far as Sorenson and his assigns were concerned, was the reasonable use outlined and discussed in the Russell-Miller Mill. Co. Case.

To hold that the contract cannot be enforced because it contemplates the creation of a nuisance is based on the doctrine of public policy,

but the contract is not a contract to permit a nuisance. Sorenson was not concerned with that. If any nuisance be committed, it has its origin, not on the premises described in the contract, but on the prem-- ises of the defendant above the stream. There was no contract made between Sorenson and the defendant authorizing the defendant to commit a nuisance on its own premises; but Sorenson did agree that whatever the defendant did do which would in any way affect his rights and damage his land would be compensated for in advance in the manner and form set forth in the contract. This does not make it illegal, nor against public policy. As pointed out in Williston v. Ludowese, 53 N. D. 797, 812, 208 N. W. 82, 88, the question of whether a contract is against public policy is to be determined from all the circumstances of the case, quoting from 13 C. J. 427. The whole subject is thoroughly discussed in 12 Am. Jur. 670, Contracts. Under the rules laid down therein, and which are amply sustained by the citations, it is clear that this contract was not against public policy. The parties had the right to contract as they did, and in so far as Sorenson and his assigns and the effect of this contract on land were concerned, the defendant and Sorenson could make a contract which in its very nature would injure Sorenson's rights as a riparian owner, and which would affect the use of the land. The plaintiff in this case purchased the land with such burden.

The fact that the defendant might be guilty of maintaining a nuisance in violation of statute did not destroy Sorenson's right to recover for his special damages. Being a right of his, he could sell it or dispose of it in such manner as he saw fit. It was a right which came to him because he owned the land, the right being inseparably connected with the land. He could dispose of this right to one person and the land to another, which was done in this case. The contract was binding upon Sorenson's successors, and therefore when the plaintiff purchased the land, he knew he was not buying the right that naturally belonged to the owner of the land because it had been disposed of in another way.

The order sustaining the demurrer is reversed.

Nuessle, Ch. J., and Christianson, Morris, and Burke, JJ., concur.