**Minnie VOLKMANN, individually and as Executrix of the last Will and Estate of Andrew Volkmann, Deceased, Edgar Volkmann and Edna Anderson, Plaintiffs and Respondents,**

v.

**CITY OF CROSBY, a Public Corporation, Defendant and Appellant, and Great Northern Railway Company, a Foreign Corporation, Defendant and Respondent.**

No. 8028.

Supreme Court of North Dakota.

Feb. 21, 1963.

Milton K. Higgins, Bismarck, for plaintiffs and respondents.

F. Leslie Forsgren, Crosby, for defendant and appellant.

Nilles, Oehlert & Nilles, Fargo, for defendant and respondent.

Iver Acker, Bismarck, amicus curiæ.

MORRIS, Chief Justice.

This is an action to enjoin the defendants from drawing or permitting the drawing or pumping of enough water from a well located on a right-of-way of the Great Northern Railway Company across the Northwest Quarter (NW¼) of Section Thirty-five (35), in Township One Hundred Sixty-three (163) of Range Ninety-seven (97) to impair or reduce the flow of an artesian well located upon land constituting a part of the Estate of Andrew Volkmann, deceased, until the defendant City of Crosby has taken the right to impair or destroy the flow of the artesian well by contract or agreement with the plaintiffs and has paid due compensation therefor.

The plaintiffs also ask for damages in the sum of $1,000, claimed to have been incurred by the operation of the city well prior to the bringing of this action and for such other and further relief as to the court may seem just and equitable.

Minnie Volkmann is the widow of Andrew Volkmann. Edgar Volkmann and Edna Anderson are children of Minnie and Andrew Volkmann. Edgar is also the present tenant of the premises on which the well is situated.

The case was tried to the court without a jury. At the close of the evidence the court dismissed the action as to the defendant Great Northern Railway Company. The dismissal is not challenged on this appeal. The court rendered judgment in favor of the City of Crosby, dismissing the action as to the plaintiffs Edgar Volkmann and Edna Anderson with prejudice and without costs, and denied the prayer of all the plaintiffs for an injunction against the City of Crosby.

The court rendered judgment in favor of Minnie Volkmann as Executrix of the Last Will and Estate of Andrew Volkmann, deceased, for $5,000 damages, with interest at four per cent per annum from the 31st day of July, 1957, against the City of Crosby. From this judgment the City of Crosby appeals and demands a trial de novo.

The plaintiffs allege in their complaint the drilling of an artesian well, the use made of the water obtained therefrom, the benefits received, and that the City, no part of which lies within the artesian basin which produces water obtained from the plaintiffs' well, has tapped the artesian basin by means of a well drilled on a portion of the Great Northern Right-of-Way, has withdrawn huge quantities of water for the uses of the City and to sell to third parties, and by such acts has reduced the flow from plaintiffs' well and has sometimes caused it to cease altogether, that the plaintiffs by loss of the

flow and the pressure in their well have already suffered damages to the extent of more than a thousand dollars, and unless the pumping by the City be enjoined and discontinued, there will be subsequent consequential damages to the plaintiffs by reason of the reduction in value of the land on which their artesian well is located in the sum of an additional $5,000.

The defendant City of Crosby in its answer denies liability and because of lack of knowledge denies many of the allegations of fact in the complaint, and as an affirmative defense alleges that the City of Crosby has applied for and received certain water rights in proceedings had before the North Dakota Water Conservation Commission under which it has acted and that it intends to continue to withdraw water from its well for the reasonable uses of the City. It asks that the plaintiffs' action be dismissed and that the plaintiffs be enjoined from making further demands for damages or compensation because of reasonable use of water in controversy by the City of Crosby to be withdrawn from its well located on the Great Northern Right-of-Way in the Northwest Quarter (NW¼) of Section 35, Township 163, Range 97.

It appears that on February 28, 1905 the General Land Office issued a receiver's receipt to Andrew Vaulkman and on September 6, 1905 the United States Government, by patent, conveyed to him title to the Northwest Quarter (NW¼) of Section 35, in Township 163, Range 97. He and his family occupied this land until his death in 1958. In 1907, he conveyed to the Dakota and Great Northern Railway Company, to whose interests the Great Northern Railway Company succeeded, a railroad right-of-way 50 feet wide on each side of the center line of the present Great Northern Railway right-of-way across the southern part of the land involved herein. In 1918, he drilled a well that produced an artesian flow of water on his land which was located near his house and farm buildings. This well produced a flow of 60 to 70 gallons per minute. In 1948, because of the rusting out of casing in this well, it became necessary to drill another well beside the first one to the same depth and producing approximately the same flow and pressure.

In July, 1957, the City of Crosby, with written permission of the Great Northern Railway Company, drilled a well on the right-of-way and within the Northwest Quarter (NW¼) of Section 35. The City well is about 1,000 feet from the Volkmann well. The City uses from 180 to 190 thousand gallons of water per day, at least 90 per cent of which comes from the well in controversy.

Prior to operation of the City well, the Volkmann well furnished water for household use, for some 50 head of livestock, chiefly cattle and horses, and sufficient water for the yard and gardens. The pressure was sufficient to supply a bathroom on the second floor of the residence. After the operation of the City well was begun, pressure in the Volkmann well became erratic and at times of heavy water use by the City disappeared entirely for approximately 180 days before the commencement of this action. In October, 1958, the flow of the Volkmann well ceased entirely, and it became necessary to haul water from off the land to supply the requirements of domestic use and the livestock.

On October 17, 1957, the City of Crosby applied to the State Engineer to permit the use of 1,085 acre-feet of water annually from ground water sources in the SE¼ NE¼ of Section 34, and the SW¼ NW¼ of Section 35, Township 163, Range 97 W. This permit was issued on January 2, 1958, on which date proof of the completion of adequate works "for the diversion of one and one-half (½) cubic feet per second of said waters" was made, the place of intended use being in the City of Crosby. On June 3, 1959, the State Engineer issued Water License No. 752, granting and confirming to the City of Crosby "a perpetual right, dating from October 17, 1957 to the use of

ground water from SE¼NE¼ Section 34, and SW¼NW¼ Section 35, all in Township 163 N., Range 97 W in the County of Divide and State of North Dakota, or so much thereof as may be necessary for the purposes hereinbelow mentioned, to be diverted one and one-half (1½) cubic feet of water per second pumped from three wells located in property described above," for the purpose of municipal and industrial supply.

■ Section 47-01-13 NDCC provides: "The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream. Water running in a definite stream formed by nature over or under the surface may be used by him as long as it remains there, but he may not prevent the natural flow of the stream or of the natural spring from which it commences its definite course, nor pursue nor pollute the same."

This provision appears in the identical language as Section 255 of the Revised Codes of Dakota Territory, 1877, and came into the law of the State of North Dakota as Section 3362 R.C.1895.

In considering the application of this section to a natural stream, this court has said:

"The right to the use of the water in its natural flow is not a mere easement or appurtenance, but is a natural right inseparably annexed to the soil itself, which arises immediately with every new division or severance of ownership. Gould on Waters, § 204. The right of a riparian owner to have a natural stream continue to flow through or by his premises in its natural quantity and purity is necessarily subject to the right of each riparian proprietor to make a reasonable use thereof. * * * In every case the test 'of the rightfulness of the use which one owner is attempting to make of the stream is whether or not such use is reasonable under all the circumstances of the case.'" Mc-

Donough v. Russell-Miller Milling Co., 38 N.D. 465, 165 N.W. 504. To the same effect, Johnson v. Armour and Co., 69 N.D. 769, 291 N.W. 113, 127 A.L.R. 828.

In Bigelow v. Draper, 6 N.D. 152, 69 N.W. 570, this court held that the right of a riparian owner to have a natural stream flow over his land is such property as may be taken under the power of eminent domain. Certain it is that the rights of the landowner provided by this statute with respect to subterranean waters not forming a definite stream, are no less than those which he has in definite streams flowing on the surface that were under consideration in the cases from which we have just quoted. His property right, however, is not an unlimited one, but is subject to the rule of reasonable use and may be appropriated by him for beneficial use. See Section 61-01-01 NDCC.

■ The doctrine of reasonable use limits the right of the landowner to use such amount of percolating waters under his land as may be necessary for some useful purpose connected with the land, or, to put it another way, he may use such amount of water as may be necessary for some useful and beneficial purpose in connection with the land from which it is taken. Evans v. Seattle, 182 Wash. 450, 47 P.2d 984, State ex rel. Erickson v. McLean, 62 N.M. 264, 308 P.2d 983, Bristor v. Cheatham, 75 Ariz. 227, 255 P.2d 173.

In this case, the evidence shows that the well of the City of Crosby and the well on the Volkmann farm located about 1,000 feet apart, draw water from a common source. The purpose for which the water drawn from the Volkmann well is used is a reasonable use connected with and beneficial to the farm on which the well is located. The purpose for which the water from the City well is used has no connection with the land on which the well is located. The use is not beneficial to that land. It is piped to the city which is not located above the source of supply where it is used for municipal

purposes and for sale to individuals. The operation of the Volkmann well began in 1918. The City well began operation in 1957.

Section 9–10–01 NDCC provides that "Every person is bound without contract to abstain from injuring the person or property of another or infringing upon any of his rights."

"The principles of natural justice and equity demand the recognition of correlative rights in percolating subterranean waters so that each landowner may use such water only in a reasonable manner and to a reasonable extent upon his own land and without undue interference with the rights of other landowners to a like use and enjoyment of waters percolating beneath their lands." Patrick v. Smith, 75 Wash. 407, 134 P. 1076, 48 L.R.A.,N.S., 740.

Oklahoma has the same statute as our Section 47–01–13 NDCC, and we there find two cases dealing with controversies similar to the one now before us. In Canada v. City of Shawnee, 179 Okl. 53, 64 P.2d 694, the City of Shawnee purchased 70 acres of land some 7 or 8 miles from the city and, for the purpose of augmenting its water supply, dug 12 wells thereon from which it pumped large volumes of water from its land and from under the land of the plaintiffs. This water was transported in pipelines to the city and there sold to its inhabitants. This resulted in the drying up of wells on the plaintiffs' land, leaving them without water for their stock, for irrigation, and household uses. The trial court denied the plaintiffs relief. The Supreme Court held that this was error and remanded the case to the trial court saying,

"We cannot escape the conclusion that the rights of these citizens have been seriously infringed upon, and that it is the duty of this court to as zealously guard the rights of the individual as it is to facilitate the needs of the municipality. The inhabitants of the city must have water, but by our stat-

utes and our Constitution the city is afforded a means of obtaining it without pauperizing those innocent private citizens who have devoted their lifetimes to improving, developing, and maintaining their homesteads."

In City of Enid v. Crow, Okl., 316 P.2d 834, it appeared that the City by drilling a water well on property adjacent to the plaintiff's property and by withdrawing percolating underground waters for sale off the premises, had reduced the plaintiff's water supply. The landowners were entitled to damages under the rule thus stated in syllabus 4 by the court,

"Where an owner of subterranean percolating waters withdraws such waters for the purpose of transporting and selling said water off the premises, resulting in a material interference with a neighboring landowner's right to the reasonable use of subsurface water on his land, he is liable for damages occasioned thereby."

Among other cases holding that one landowner is not entitled to take underlying percolating water from a common source and transport it to distant lands not overlying the common supply if such taking is injurious to other landowners occupying similar positions with respect to that supply are Katz v. Walkinshaw, 141 Cal. 116, 70 P. 663, 74 P. 766, 64 L.R.A. 236, 99 Am.St.Rep. 35; Meeker v. East Orange, 77 N.J.Law 623, 74 A. 379, 25 L.R.A.,N.S., 465, 134 Am.St.Rep. 798; Schenk v. City of Ann Arbor, 196 Mich. 75, 163 N.W. 109, L.R.A. 1917F, 684, Ann.Cas.1918E, 267; Koch v. Wick, Fla., 87 So.2d 47; Rothrauff v. Sinking Spring Water Co., 339 Pa. 129, 14 A.2d 87.

■ The majority of pertinent cases lead us to the conclusion that regardless of what may be the correlative rights of owners of land lying above subterranean percolating waters constituting a common source of supply, one landowner may not extract and convey such waters off his land to the impair-

ment or injury of a prior reasonable beneficial use to which such waters have been put by another landowner. Offending landowners, including municipalities, are liable to respond in damages.

▮ Our attention has been called to Chapter 345 N.D.S.L. 1955 wherein percolating ground waters were for the first time specifically declared to belong to the public and subject to appropriation for beneficial use. It also provided that the right to such use shall be acquired pursuant to the provisions of Chapter 61–04 N.D.R.C. 1943. It is under this chapter that the City of Crosby applied to and received from the State Engineer Water License No. 752 to which we have already referred. Chapter 345 is now incorporated in Section 61–01–01 NDCC.

▮ In this case, the percolating ground waters tapped by the Volkmann well were being withdrawn and put to a reasonable and beneficial use as heretofore described before the enactment of Chapter 345, N.D.S.L. 1955. That use constituted an appropriation and an assertion of a property right vested in Andrew Volkmann by Section 47–01–13 NDCC. See Nichols v. McIntosh, 19 Colo. 22, 34 P. 278; Cooley's Const. Limitations, 8th ed. p. 1193; Katz v. Walkinshaw, supra; Baumann v. Smrha, 10 Cir., 145 F.Supp. 617, affirmed 352 U.S. 863, 77 S.Ct. 96, 1 L.Ed.2d 73; St. Germain Irrigating Co. v. Hawthorn Ditch Co., 32 S.D. 260, 143 N.W. 124. In the latter case, it is said:

"The private owner of real estate, who sinks an artesian well on his premises, is the absolute owner of the water flowing therefrom and may control the whole thereof as he may see fit so long as he does no injury thereby to others; the private owner of real estate who constructs an artificial reservoir on his premises, in which he collects and retains surface waters wholly on his own premises, is the absolute owner thereof and may use and control the whole thereof as he may see fit so long as he does no injury thereby to others. The right to use such waters cannot be thus confiscated or interfered with by the state or the public and placed in the custody and control of a state engineer any more than could the land itself upon which such water happened to be."

This we quote not with approbation of all that may be implied therefrom, but to support the proposition that where a landowner has applied percolating subterranean water to a reasonable beneficial use on his overlying land and has thereby acquired a vested right to that use, the state may not by subsequent legislation authorize its impairment or destruction without compensation.

We reach the conclusion that the rights acquired by the City of Crosby under Water License No. 752 are inferior to the vested rights of the Andrew Volkmann estate and affords the City no defense against responding in damages for injury to those rights. The judgment appealed from is affirmed.

TEIGEN, BURKE and STRUTZ, JJ., concur.

ERICKSTAD, J., not being a member of the Court at the time of submission of this case, did not participate.