Raymond H. BAETH and Ann C. Baeth,
Plaintiffs,

v.

Milo W. HOISVEEN, as State Engineer for
the State of North Dakota; and Governor
William L. Guy, Richard P. Gallagher,
Henry J. Steinberger, Gordon Gray, Arnie
Dahl, Russell Dushinske, Harold R. Hanson, Constituting the State Water Commission, an Administrative Agency of the
State of North Dakota, Defendants.

Civ. No. 8417.

Supreme Court of North Dakota.

March 28, 1968.

Thompson, Lundberg & Nodland, Bismarck, for plaintiffs.

Helgi Johanneson, Atty. Gen., and Clifford Jochim, Asst. Atty. Gen., Bismarck, for defendants.

PAULSON, Judge (on reassignment).

This matter comes to us pursuant to the provisions of Chapter 32–24 of the North Dakota Century Code, upon a question of law certified by the district court of Burleigh County, North Dakota. The action was originally brought under the Declaratory Judgments Act (Ch. 32–23, N.D.C.C.), asking that the plaintiffs' rights as owners of the land overlying underground water in a well-defined stream be adjudicated, and that Section 61–01–01, N.D.C.C., and Section 47–01–13, N.D.C.C., which has since been repealed, be construed by the court so as not to violate certain inchoate "rights" of the plaintiffs. During the course of the trial the following question of law, which was answered in the negative by the trial court, was certified to this court:

"Is Section 61–01–01 of the North Dakota Century Code constitutional as applied to require compliance to Chapter 61–04 of the North Dakota Century Code where the following facts are stipulated:

"a. Individual (plaintiff) is withdrawing water for irrigation of overlying land owned by himself.

"b. Individual (plaintiff) holds title to overlying land by continuous chain of private ownership title dating back to patent from the United States Government dated November 4, 1898.

"c. Individual (plaintiff) purchased title to overlying land by Warranty Deed dated June 18, 1951, free and clear of all encumbrances."

Further pertinent stipulations of fact are as follows:

That in 1877, or prior thereto, the Territory of Dakota enacted Civil Code Section 255, declaring that the surface owner of real property owns the percolating waters lying beneath, and that said statute was incorporated into the laws of

the State of North Dakota at the time of Statehood in 1889;

That the United States of America issued a patent to the Northern Pacific Railroad conveying all right, title and interest in the property in question to the Northern Pacific Railroad on the 4th day of November 1898;

That between the dates of November 4, 1898, and June 18, 1951, the property in question remained under ownership of private individuals, and was purchased on June 18, 1951, by the plaintiffs in the instant case and has been held by them continuously to date;

That in the year 1955, the State of North Dakota specifically declared that all waters under the surface of the earth whether such waters flow in defined subterranean channels or are diffused percolating underground waters, belong to the public and are subject to appropriation for beneficial use;

That in 1961 the plaintiffs expended in excess of $10,000 for a well and irrigation equipment located in and upon the premises in question in order that they might withdraw the underground water and apply it to those premises;

That later in 1961 the plaintiffs were informed by representatives of the State Water Commission that the waters under the plaintiffs' land did not belong to the plaintiffs, but that such waters belonged to the public generally and could be used for irrigation purposes only after obtaining a permit from the North Dakota State Engineer, and that in the absence of such a permit the plaintiffs had no right to use the water under their land for irrigation purposes, and that the withdrawal of that water without a permit could result in legal proceedings against the plaintiffs;

That on June 26, 1961, the plaintiffs made application for a water permit, requesting permission to appropriate 960 acre-feet annually with a withdrawal rate of 900 gallons per minute;

That a hearing was held on said permit application on January 22, 1962, and at the hearing a written objection to the granting of the permit was filed by G. D. Adams, a neighbor of the plaintiffs who claimed that granting of the permit would interfere with his withdrawal of water under a pending permit application;

That in March 1962 plaintiffs were informed by representatives of the North Dakota Water Commission that they could pump without permit for irrigation purposes as the basis for supplying information to the State Water Commission concerning the use of water in the area;

That during the summer of 1963 the State Engineer recommended that the plaintiffs restrict their pumping to not more than 200 gallons per minute and that failure to comply with such regulation could result in legal proceedings against the plaintiffs;

That on June 15 or 16, 1965, the plaintiffs received a permit allowing them to withdraw 200 gallons per minute, or not to exceed 323 acre-feet annually, and that, for the purposes of this case, the waters underlying plaintiffs' land would be considered to be underground water moving in a more or less well-defined channel.

■ Prior to answering the constitutional question presented on this certification, it is appropriate that we review the historical background to the present controversy. The Desert Land Act of 1877 (43 U.S.C.A. § 321 et seq.), as construed in California-Oregon Power Co. v. Beaver Portland Cement Co., 295 U.S. 142, 55 S.Ct. 725, 79 L.Ed. 1356 (1935), provides that patents of federal lands subsequent to the date of the Act shall not pass title to any appurtenant water rights, but that such water rights shall be determined by the laws of the respective States or Territories. Under that Act, and *California-*

*Oregon Power,* supra, the present controversy is to be resolved by applying North Dakota law.

 In 1905 the State Legislature passed the following statute:

"All waters within the limits of the state from all sources of water supply belong to the public and, except as to navigable waters, are subject to appropriation for beneficial use." [N.D.S.L. 1905, Ch. 34, § 1.]

This statute is the first official indication of the legislature's approval of the doctrine of prior appropriation, which doctrine, of course, must be based upon public ownership.

In Larson, The Development of Water Rights and Suggested Improvements in the Water Law of North Dakota, 38 N.D.L.Rev. 243, 254–255 (1962), the following statement is made:

"Since water rights constitute property the states are prohibited from depriving any person of lawful vested water rights 'without due process of law.' The usual interpretation of this phrase is to require a lawful application of the power of eminent domain for a public purpose with compensation for private property acquired by the taking. The limitation would apply directly to the situations where a state seeks to acquire vested water rights for its own purposes. The more controversial application of the limit arises when a state wishes to change from one water rights doctrine to another or when the state seeks to narrow the definition of a water right. To the extent that water rights are privately vested, the courts have often held that they could not constitutionally be divested without compensation; protection is derived from 'due process' clauses and from specific clauses protecting against deprivation of private property without compensation. *The requirement seems eminently fair where the individual has actually been using the water of which he is deprived;*

*a more perplexing issue is whether compensation ought also to be required for the divestiture of unused riparian rights."* [Emphasis supplied.]

The first issue to be determined in this case is pointed out by the preceding quotation: that is, whether a riparian owner has a "vested right" in waters underlying his land of which he made no use prior to the legislative enactment claiming such waters for the State.

Section 47–01–13 of the North Dakota Century Code, which was in effect at the time that this controversy arose and which had been in effect in the same form since territorial days, provides, in pertinent part:

" * * * Water running in a definite stream formed by nature over or under the surface may be used by him [the landowner] as long as it remains there * * *." [Insertion ours.]

This section constituted a legislative declaration of the property rights of riparian owners. The particular portion of the section, as above quoted, is at the heart of the present matter, the question being: What is the nature of the right granted by Section 47–01–13, N.D.C.C., and its predecessors?

In Knight v. Grimes, 80 S.D. 517, 127 N. W.2d 708, 711 (1964), the South Dakota Supreme Court stated:

"Beyond doubt there has been an invasion of a pre-existing right or interest. It seems desirable to clearly focus on the nature of this right or interest. The notion that this right to take and use percolating water constitutes an actual ownership of the water prior to withdrawal has been demonstrated to be legally fallacious."

In Volkmann v. City of Crosby (N.D.), 120 N.W.2d 18, this court determined that the owner of land riparian to underground waters who had applied such waters to a beneficial use, acquired a vested right to that use, and such right could not be taken without the payment of just compensation.

In *Volkmann,* supra, this court stated, at page 24:

"In this case, the percolating ground waters tapped by the Volkmann well were being withdrawn and put to a reasonable and beneficial use as heretofore described before the enactment of Chapter 345, N.D.S.L.1955. That use constituted an appropriation and an assertion of a property right vested in Andrew Volkmann by Section 47–01–13 NDCC. * * * St. Germain Irrigating Co. v. Hawthorn Ditch Co., 32 S.D. 260, 143 N.W. 124. In the latter case, it is said:

'The private owner of real estate, who sinks an artesian well on his premises, is the absolute owner of the water flowing therefrom and may control the whole thereof as he may see fit so long as he does no injury thereby to others; the private owner of real estate who constructs an artificial reservoir on his premises, in which he collects and retains surface waters wholly on his own premises, is the absolute owner thereof and may use and control the whole thereof as he may see fit so long as he does no injury thereby to others. The right to use such waters cannot be thus confiscated or interfered with by the state or the public and placed in the custody and control of a state engineer any more than could the land itself upon which such water happened to be.'

"This we quote not with approbation of all that may be implied therefrom, but to support the proposition that where a landowner has applied percolating subterranean water to a reasonable beneficial use on his overlying land and has thereby acquired a vested right to that use, the state may not by subsequent legislation authorize its impairment or destruction without compensation."

■ This quote from *Volkmann,* supra, although directly concerned with percolating ground water, is equally applicable to underground water in a more or less well-defined stream. The crux of the quotation is that a landowner of premises overlying ground water, be it percolating or in a more or less well-defined stream, acquires a vested right following withdrawal and application of said ground water to a beneficial use. This is commonly referred to as a usufructuary right.

■ Thus, we hold that there is no absolute ownership of ground water underlying that land which has not actually been diverted and applied to a beneficial use. Thus a landowner does not have a "vested right" to unused ground water underlying his land. Knight v. Grimes, supra; Baumann v. Smrha, 145 F.Supp. 617 (D.Kan. 1956), aff'd 352 U.S. 863, 77 S.Ct. 96, 1 L.Ed.2d 73 (1956); Williams v. City of Wichita, 190 Kan. 317, 374 P.2d 578 (1962), appeal dismissed, 375 U.S. 7, 84 S.Ct. 46, 11 L.Ed.2d 38 (1963).

■ South Dakota's history in regard to water and water rights is very similar to ours. Both States, as a Territory, came under the provisions of the Desert Land Act, and both States derived much of their water law from Section 255 of the Revised Civil Code of 1877. Both States are largely semiarid, and in both States the general welfare requires that water resources be put, to the fullest extent capable, to beneficial uses.

■ In Knight v. Grimes, supra, the plaintiff, a landowner, brought suit for a declaratory judgment that certain portions of the South Dakota Water Code violated both the United States and the South Dakota Constitutions. The South Dakota statutes involved are very similar to the statutes being questioned in the instant case. The Circuit Court of Brookings County dismissed the action and the Supreme Court of South Dakota affirmed that dismissal. The court determined that the right to unused riparian percolating waters was not a "vested right" and that the South Dakota statute dedicating all waters to the public and conditioning their use upon application to the chief engineer and the Water Resources

Commission was a valid exercise of the State's police power.

The South Dakota court stated, at 127 N. W.2d 714:

"Being convinced that the legislature was justified in believing that the public welfare requires conservation and preservation of the water supply of the state, that it is not required that irreparable damage be done before action can be taken to conserve and preserve, and that it has not been shown that the regulations adopted are unreasonable or arbitrary, the order of the trial court dismissing such action is affirmed."

Although the North Dakota Legislature did not see fit to specifically define a "vested right" in its 1955 amendment to the Water Code, it did define the reciprocal rights of riparian owners in Section 61–01–01.1, N.D.C.C. (prior to amendment in 1963), as follows:

"The several and reciprocal rights of a riparian owner, other than a municipal corporation, in the waters of the state comprise the ordinary or natural use of water for domestic and stock watering purposes."

The Legislature went on to state in Section 61–01–02, N.D.C.C.:

"Beneficial use shall be the basis, the measure, and the limit of the right to the use of water. * * *"

Thus it seems clear that the legislative intent in regard to "vested rights" was to consider only a previous beneficial use of ground water.

■ A declaration that all waters in the State belong to the public and may be appropriated through proper administrative procedure is a valid exercise of the State's police power, insofar as it does not expropriate "vested rights". Because the "vested right" which the plaintiff in the instant case claims is, in reality, a usufructuary right, and its existence is contingent upon application of the underlying water to beneficial use, the legislative exercise of power embodied in Section 61–01–01, N.D.C.C., does not "expropriate" any "vested right" of the plaintiff.

■ North Dakota is, in part, a semi-arid State. Therefore, concern for the general welfare could well require that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable method of use of water be prevented, and that the conservation of such water be exercised with a view to the reasonable and beneficial use thereof in the interests of the people and the public welfare. We feel that the foregoing factors formed the basis for the legislative enactment of Section 61–01–01, N.D.C.C.

■ Section 47–01–13, N.D.C.C., prior to its repeal, was the codification of the usufructuary right; that is, a right which became vested upon application to a beneficial use. The plaintiffs in this case were not applying the water underlying their land to a beneficial use prior to 1955, and, therefore, at the time this suit was commenced, did not have such a "vested right" as would be protected by the Fourteenth Amendment to the United States Constitution or by Article I, Section 14, of the North Dakota Constitution.

■ Notwithstanding what this court said in Bigelow v. Draper, 6 N.D. 152, 69 N.W. 570, and in subsequent supporting decisions which may be construed to the contrary to what is said in the instant case, we hold that there is no deprivation of a constitutional right or rights, and that the action taken by the legislature in enacting Section 61–01–01, N.D.C.C., is within the police power of the State, as a reasonable regulation for the public good.

■ In upholding the constitutionality of Section 61–01–01, N.D.C.C., we do not

approve the procedure followed by the State Water Commission in the instant case, which resulted in granting to one of two landowners, who owned adjacent land and who made application at approximately the same time for beneficial use of water, the use of so much water that the other was in effect denied use of any water. The failure on the part of the State Water Commission to determine the actual amount of water available before granting the first neighbor's application resulted in a very disproportionate granting of water rights. Such a procedure, if followed in the future, might well justify legislative action directed toward preventing the reoccurrence of such inequitable results.

The question certified to this court is answered in the affirmative and the case is remanded for further proceedings not inconsistent with this opinion.

STRUTZ and ERICKSTAD, JJ., concur.

TEIGEN, Chief Justice (concurring specially.)

I concur in the majority opinion. However, I wish to point out the subject matter of the comment contained in the majority opinion wherein it is stated we do not approve the procedure followed by the State Water Commission in the instant case is not before us because the certified questions as framed do not include the procedure employed in administering the law in question. Although it is true that as a general rule a law cannot be held unconstitutional because, while its just interpretation is consistent with the constitution, it is unfaithfully administered by those who are charged with its execution it is, nevertheless, an equally well-established principle that a provision not objectionable on its face may be adjudged unconstitutional because of its effect in operation upon a showing of a fixed and continuous policy of unjust and discriminatory application by the officials in charge of its administration.

KNUDSON, Judge (concurring specially).

I concur in the syllabus of the opinion prepared by Judge Paulson but do not agree with all that is said in the opinion.

Section 61–01–01 is a part of chapter 61 of the North Dakota Century Code headed "Waters," covering the whole field of the law on waters, including the laws on irrigation. The foregoing statutory provision was a part of a comprehensive statute on irrigation enacted by the Legislative Assembly in 1905, Session Laws 1905, chapter 34, section 1, and has been retained in subsequent compilations and codes, including the Century Code.

I agree with the majority in their finding that the statute constitutes a reasonable exercise of the police power of the state and is not unconstitutional, and especially so when considered with all of the other provisions of the laws governing the regulation and use of waters for irrigation purposes.

> Subject to constitutional guaranties for the protection of property rights, the public authority, under the police power, may enact and enforce reasonable regulations in respect of the exercise of the right of appropriation.

56 Am.Jur. Waters § 295 (1947).

I do not believe that in the majority opinion it was necessary to go into a discussion of the questions of the vested rights and priorities of the several riparian owners as we ought not to determine those rights and priorities from the very unsatisfactory record before us. Such questions should be resolved only after a full-blown trial, affording all parties the opportunity to present all the facts and circumstances in the matter.

However, since the majority has gone into a discussion of the merits I feel compelled to comment that the action taken by the Water Commission may not be within a valid exercise of the police power, and thus constitutes an unconstitutional application of the law.