Monica UNDLIN, Plaintiff and
Appellant,

v.

CITY OF SURREY, North Dakota, a
Municipal Corporation, Defendant
and Appellee.

Civ. No. 9408.

Supreme Court of North Dakota.

Feb. 16, 1978.

Palda & Slorby, Minot, for plaintiff and appellant; argued by Robert W. Palda, Minot.

McGee, Hankla, Backes & Wheeler, and Anderson, Tossett & Berning, Minot, for defendant and appellee; argued by Robert A. Wheeler, Minot.

PEDERSON, Justice.

This is an appeal by Monica Undlin from an order granting a motion for a directed verdict, made by the City of Surrey at the conclusion of the case of the plaintiff. Undlin sought to recover damages, under a theory of inverse condemnation,[1] for the loss of the use of a water well. We reverse.

■ The facts, for purposes of this appeal, are deemed to be not controverted and are viewed from a position most favorable to Undlin. Undlin owned a tract of approximately 29 acres of land located a short distance north of Surrey, North Dakota. This land, which was purchased under a contract for deed in October, 1973, contains a farmstead (including a house, barn and outbuildings) and a feedlot. There is a small coulee running through the tract and, within this coulee, are two separate, one-half acre parcels of land owned by the City of Surrey. Upon each of Surrey's tracts is a large water well. The first of these parcels was purchased in 1967 (prior to the Undlin purchase), at which time Surrey commenced withdrawing water from the premises.

For many years wells have also been located on the Undlin property, and the water from these wells has been used by the successive landowners for domestic and livestock purposes. A former owner testified that the wells in the coulee produced good water during "the dirty 30's" when there was no other water available in the area. This former owner also told of drilling a well and having the water rise to within a foot of the ground's surface in that well. The withdrawals of underground water by the successive owners of this property, including Undlin, have been continuous.

In excess of 900 cattle have been watered by the Undlin wells according to one witness, while another told of 300 or 400 head of cattle and several hundred pigs being

---

1. See, *Lee v. North Dakota Park Service*, 262 N.W.2d 467 (N.D.1978).

watered at the same time. At the time of trial, the feedlot housed only 90 head of cattle.

The close proximity of the Undlin and Surrey wells, all of which are located within an approximate 200-foot radius, indicates a possibility that a common source of ground water is being tapped by all concerned.

In August, 1974, Undlin discovered that she could no longer withdraw *any* water from her well. She was eventually forced to drill a new well in the same general vicinity. That well was completed and began producing in November, 1974. Surrey continued to withdraw water from its wells during this time, but began to experience difficulties of its own in obtaining sufficient water from its wells in late 1974.

Undlin's first well produced ample, good quality water for large numbers of livestock. Undlin's present well produces much less, and the water is of poorer quality. The low-quality water has led to damage to plumbing and plumbing fixtures and is not usable for some household purposes. Undlin was forced to haul water for domestic and livestock purposes between the time her first well ceased production and the time her present well began production. An expert appraiser testified that Undlin's land could not be put to its highest and best use, a feedlot, with the current supply of water. He testified that this resulted in a substantial loss in value of the property.

The City of Surrey has at all times operated its wells under a permit from the State Water Commission.

In *Volkmann v. City of Crosby,* 120 N.W.2d 18 (N.D.1963), this Court relied upon a statute (§ 47–01–13, NDCC) in concluding that an owner of land had a property right in percolating subterranean waters. The 1963 Legislature repealed that statute.

"Section 47–01–13, N.D.C.C., prior to its repeal, was the codification of the usufructuary right; that is, a right which became vested upon application to a beneficial use." *Baeth v. Hoisveen,* 157 N.W.2d 728, 733 (N.D.1968).

In *Baeth, supra,* this Court upheld the constitutionality of § 61–01–01, NDCC,[2] which asserts public ownership of much of North Dakota's water resources, against a claim that this statute works a deprivation of property without due process of law. The Court, in *Baeth,* 157 N.W.2d at 733, *supra,* held "that the action taken by the legislature in enacting section 61–01–01, N.D.C.C., is within the police power of the State, as a reasonable regulation for the public good." Crucial to the decision in that case was the fact that the plaintiffs had not acquired any vested rights in the water. Robert E. Beck, in his article *Rights in Water in North Dakota,* explains that: "Constitutional problems are overcome by treating the riparian water uses as inchoate until such time as they are used." 51 N.D. L.Rev. 249, 262 (Winter, 1974). While treatment of unused water rights as inchoate may have prevented the *Baeth* plaintiffs from claiming such rights, it cannot perform that function in the instant case. Undlin claims, and has adduced evidence,

2. "61–01–01. Waters of the state—Public waters.—All waters within the limits of the state from the following sources of water supply, namely:

1. Waters on the surface of the earth excluding diffused surface waters but including surface waters whether flowing in well defined channels or flowing through lakes, ponds, or marshes which constitute integral parts of a stream system, or waters in lakes; and

2. Waters under the surface of the earth whether such waters flow in defined subterranean channels or are diffused percolating underground waters; and

3. All residual waters resulting from beneficial use, and all waters artificially drained; and

4. All waters, excluding privately owned waters, in areas determined by the state engineer to be noncontributing drainage areas. A noncontributing drainage area is hereby defined to be any area which does not contribute natural flowing surface water to a natural stream or watercourse at an average frequency oftener than once in three years over the latest thirty year period;

belong to the public and are subject to appropriation for beneficial use and the right to the use of these waters for such use, shall be acquired pursuant to the provisions of chapter 61–04."

that she and her predecessors in interest have made beneficial use of the disputed water for more than forty years.

 The former § 47–01–13, NDCC, being a codification of the usufructuary right, we hold that the right was not lost by the repeal of the statute.

". . . where a landowner has applied . . . subterranean water to a reasonable beneficial use on his overlying land and has thereby acquired a vested right to that use, the state may not by subsequent legislation authorize its impairment or destruction without compensation." *Volkmann v. City of Crosby,* 120 N.W.2d at 24, *supra.*

The vested right remains unless it has been lost by means other than the repeal of § 47–01–13. In her complaint Undlin alleged that she has "a vested usufructuary property right to the beneficial use of the water underlying her lands . . .," and she has adduced evidence which tends to show that just such a right was acquired.[3]

 The motion for a directed verdict was made pursuant to Rule 50(a), North Dakota Rules of Civil Procedure. This Court has, on numerous occasions, discussed the standards applicable to the granting of such motions. See *Rau v. Kirschenman,* 208 N.W.2d 1, 4–5 (N.D.1973).

"'A motion for directed verdict is to be denied unless the evidence is such that reasonable men, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, could not disagree upon the conclusion to be reached.'" *Waletzko v. Herdegen,* 226 N.W.2d 648, 651 (N.D.1975), quoting from the syllabus in *Nokota Feeds, Inc. v. State Bank of Lakota,* 210 N.W.2d 182 (N.D.1973).

"A motion for a directed verdict should not be granted unless the moving party is entitled to a judgment on the merits as a matter of law. In determining whether or not the moving party is entitled to a judgment on the merits as a matter of law, the evidence should be evaluated in the light most favorable to the party against whom the motion was made." *Rau v. Kirschenman,* 208 N.W.2d at 2, *supra.*

"However, a mere scintilla of evidence in favor of the party against whom the motion is made does not preclude the granting of the motion." *Askew v. Joachim Memorial Home,* 234 N.W.2d 226, 240 (N.D.1975).

See also, *Frank v. Daimler-Benz, A. G., Stuttgart,* 226 N.W.2d 143, 147–148 (N.D. 1975).

---

3. Because this case must be remanded for a retrial, we direct the attention of the parties to § 61–04–22, NDCC:

"61–04–22. Prescriptive water right.—Any person, firm, corporation or municipality which used or attempted to appropriate water from any watercourse, stream, body of water or from an underground source for mining, irrigating, manufacturing or other beneficial use over a period of twenty years prior to July 1, 1963, shall be deemed to have acquired a right to the use of such water without having filed or prosecuted an application to acquire a right to the beneficial use of such waters if such user shall, within two years from July 1, 1963, file with the state engineer an application for a water permit in the form required by the rules and regulations of the state engineer, and substantiated by such affidavits and other supporting information as the state engineer may require. If the state engineer finds that the application and supporting documents substantiate the claim he shall approve such application, which shall thereupon become a perfected water permit with a priority date relating back to the date when water in the quantity stated in the application was first appropriated. *In the event the prescriptive user shall fail to file with the state engineer an application for a water permit within two years from July 1, 1963, such prescriptive water right shall be declared abandoned and forfeited.* The decision of the state engineer in rejecting an application made under the provisions of this section may be appealed to the district court in the manner prescribed by section 61–04–07. Within sixty days after July 1, 1963 the state engineer shall cause to be published in all official county newspapers within the state notice of the deadline of filing for a water permit by prescriptive users. Any such prescriptive water permit acquired under this section shall be subject to forfeiture for nonuse as prescribed by sections 61–04–23 through 61–04–25." As amended 1965. [Emphasis added.] (A 1977 amendment, not in force at the time this case arose, does not alter the emphasized language.)

This statute has formed no part of the appeal before this Court. We make no comment as to its constitutionality.

The grounds upon which Surrey sought a directed verdict were listed in the Order Granting Motion For Directed Verdict:

"1. Plaintiff [Undlin] has offered no evidence to prove negligence on the part of the Defendant [Surrey], and, in fact, Plaintiff has indicated an intention to abandon the claim of negligence;

"2. Plaintiff has offered no evidence of any taking of Plaintiff's property by Defendant;

"3. Plaintiff has offered no evidence of excessive withdrawal of water by Defendant;

"4. Plaintiff has offered no evidence linking any loss of water by Plaintiff to acts or omissions of the Defendant;

"5. Plaintiff has offered no evidence that there is not an adequate supply of good water under Plaintiff's land;

"6. Plaintiff has offered no evidence that any alleged decline in the quality of Plaintiff's water is due to any act or omission of the Defendant;

"7. Plaintiff has failed to prove any damages."

The trial court found, as a matter of law, that Undlin's evidence was "insufficient to support a verdict by the jury in favor of the Plaintiff [Undlin] on the grounds and for the reasons given by the Defendant [Surrey] in its Motion." We do not agree. Surrey's motion for dismissal asserts that Undlin offered no evidence when, in fact, Undlin either did offer evidence or was not required to offer evidence.

Undlin did not resist that portion of the motion dealing with negligence. This is not fatal to her case, however, as no showing of negligence is required in an action proceeding under an eminent domain theory based on Section 14 of the North Dakota Constitution.[4]

"Negligence constitutes no exception to this provision [Section 14], nor is tort of any kind made an exception. If private property is taken or damaged for public use, compensation must be made in all cases, regardless of the means employed or the intent or lack of intent on the part of public officials." *Kinnischtzke v. City of Glen Ullin,* 79 N.D. 495, 57 N.W.2d 588, 599 (1953).

Undlin has introduced evidence which shows that she had a well, and that that well produced water of a satisfactory quantity and quality. She has introduced evidence which shows that she has a property interest in the water which was produced. *Volkmann v. City of Crosby,* 120 N.W.2d 18 (N.D.1963). She has further shown, at least by inference, that Surrey established wells which drew water from the same aquifer. She has shown that Surrey does not use the water on its two small tracts, but instead sells the water to Surrey residents, which necessitates piping the water off the premises. She has shown that the failure of her well coincided with the increased pumping necessitated by an increase in the population of the City of Surrey. She has succeeded in drawing a link between the loss of her well and increased withdrawals of water by the City of Surrey.

If Undlin's claim to the water is superior to that of Surrey, any activity of Surrey which prevents Undlin from taking water is actionable. *Bigelow v. Draper,* 6 N.D. 152, 69 N.W. 570, 573 (1896). It is unnecessary for Undlin to show that Surrey has withdrawn more water than its permit allows. While Surrey, of course, has the legal power to take the water, it nonetheless must compensate Undlin for damages which result. *Volkmann v. City of Crosby,* 120 N.W.2d at 24, *supra.*[5]

Undlin has introduced evidence of damages, including testimony and reports by an expert appraiser, as well as testimony

---

4. "Section 14. Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner. . . . ."

5. Section 61–04–06.1, NDCC, which would have required Undlin to show that she could not "reasonably acquire . . . [her] water under the changed conditions," had not gone into effect when this action arose.

as to incidental expenses incurred because of the loss of water. We do not infer that Undlin has proven the amount of damages which she claims.

In summary, it is clear that Undlin has introduced more than a scintilla of evidence which counteracts grounds given for dismissal. The motion for a directed verdict should not have been granted. The case is reversed and remanded for a new trial in accordance with this opinion.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.